HENNESSEY ET AL. *v.* BREED, ELLIOTT AND HARRISON, INCORPORATED.

[No. 12,692.   Filed January 30, 1931.]

*Frank E. Osborn, Lee L. Osborn, Kenneth D. Osborn* and *Alfred J. Link,* for appellants.

*Joseph M. Milner, Herman W. Sallwasser, Norman H. Sallwasser* and *Milton J. Sallwasser,* for appellees.

CURTIS, J.—On October 25, 1922, Breed, Elliott and Harrison, Incorporated, appellee herein, commenced this action in the LaPorte Circuit Court, against John C. Hennessey and Kate Hawley Hennessey, his wife, appellants, and also against Joseph Hickey and Rose C. Simcox. During the proceedings in the court below, the cause was dismissed as to Joseph Hickey. A judgment by default was entered against Rose C. Simcox and the cause was thus terminated as to her.

The complaint was in one paragraph for the foreclosure of municipal assessment liens for sewer assessments, on account of Main Trunk Sewer number 20, against certain real estate owned by the appellants and located in the city of LaPorte, Indiana, the final assessment roll for which improvement was approved by the common council of said city on May 27, 1912 and delivered to its department of finance for collection. It is alleged in the complaint that the appellants signified their intention to pay their assessments in 10 annual installments and

entered into an agreement in writing that they would make no objection to any illegality or irregularity with regard to said assessments against their said property and would pay the same as required by law, with the specified interest, which agreement was filed in the office of said department of finance; that thereafter the department of finance issued to the contractor who made said improvement, or to bearer, improvement bonds covering the amount of said assessments, which said bonds were transferred by said contractor or bearer to the appellee, and that the same are still owned by the appellee. It is further alleged that the appellants wholly failed and neglected to pay the installment of principal and interest which became due on the first Monday of May, 1913, and that a 15-day notice was served by the owner of said liens upon the defaulting property owner, whereupon the whole assessment became due and payable. The complaint further alleges that the defendants, John C. Hennessey and Kate Hawley Hennessey, "are personally liable on account of the waiver so signed by them," and asks the court that the liens of said assessments against said real estate be enforced and foreclosed against all defendants, and that said real estate be ordered sold to satisfy said liens and that there be a personal judgment also against said defendants Hennessey and Hennessey, together with interest, attorney's fees and costs and all proper relief.

On the day of trial, February 5, 1924, and just before entering upon the trial, the plaintiff, under leave of court and over the objection of the defendants, filed in court the waiver heretofore mentioned, whereupon the Hennesseys moved the court to require the plaintiff to separate its complaint into two paragraphs and number the paragraphs, which motion was denied by the court to which ruling, the said Hennesseys separately and

severally excepted. They then filed their separate answers to the complaint in five paragraphs, the first being a general denial, the second a plea of payment, the third the five-year statute of limitations as to the foreclosure of the lien, the fourth the 10-year statute of limitations as to a personal judgment and the fifth the five-year statute of limitations to the complaint generally. Upon the issues thus joined, the court found for the plaintiff, against defendants John C. Hennessey and Kate Hawley Hennessey, decreed a foreclosure of the liens set out in the complaint, and ordered the property described in the complaint as belonging to the Hennesseys sold in parcels to make the amount found against each lot, and the surplus, if any, left after the payment of said assessments, interest and costs, to be paid into court for the use of the party entitled thereto. The further judgment of the court is: "It is further ordered adjudged and decreed by the court that the plaintiff recover in this action the sums respectively found to be owing on the several lots against said lots respectively, and that, in case the property described in the complaint as belonging to the said defendants, John C. Hennessey and Kate Hawley Hennessey, does not sell for enough to pay the amounts found due and owing and covered by the liens against the said several lots respectively and costs, that then the sheriff should levy the remainder on the goods of the said John C. Hennessey and sell the same to make up the deficiency arising from the sale of the lots."

Judgment in form as above set out, was rendered below on March 25, 1925; and, on April 20, the Hennesseys filed separate motions for a new trial, which were identical except as to their names. Each contained 10 reasons and grounds: (1) The finding of the court is not sustained by sufficient evidence; (2) the finding of the

court is contrary to law; (3) the decision of the court is not sustained by sufficient evidence; (4) the decision of the court is contrary to law; (5) error in the assessement of the amount of recovery, in this, the amount is too large; (6) the assessment of the amount of recovery against the said defendant, John C. Hennessey, is erroneous, being too large; (7) the court erred in permitting plaintiff to file in said cause the paper, marked "Plaintiff's Exhibit 1," being the waiver signed by John C. Hennessey; (8) the court erred in permitting plaintiff to introduce in evidence the paper marked "Plaintiff's Exhibit 1," being the waiver signed by John C. Hennessey; (9) the court erred in entering a personal judgment against the defendants; (10) the court erred in decreeing a foreclosure of the lien, mentioned in plaintiff's complaint, against the defendants. November 6, 1925, each motion for a new trial was overruled by the court, to which rulings the said Hennesseys separately and severally excepted and an appeal was prayed to this court.

The errors relied upon for reversal are: (1) The court erred in overruling the motion of John C. Hennessey for a new trial; (2) the court erred in overruling the motion of the appellant, Kate Hawley Hennessey, for a new trial; (3) the court erred in permitting plaintiff to file in court the waiver signed by John C. Hennessey over the objection of the appellants; (4) the court erred in overruling defendant's motion to require plaintiff to separate and number its complaint into two paragraphs.

The appellants say that the court erred in ordering a foreclosure of the assessment liens and argue that the statute of limitations has run against that part of this action. The appellants also say that the court erred in rendering a personal judgment against John C. Hennes-

sey. In both of these contentions, we think appellants are wrong.

John C. Hennessey executed the waiver heretofore mentioned. The waiver so executed by him and filed with the department of finance of the city of LaPorte, together with the waivers executed by other property owners affected by said improvement and assessed therefor, formed the basis of the bond issue for said improvement. These bonds are the bonds owned by the appellee. The waiver signed by John C. Hennessey was the usual one under the statute and, like other such waivers, accomplished three things, namely: (1) Secured the privilege to the property owner to pay the assessments in 10 annual installments; (2) it waived all illegalities and irregularities with reference to the proceedings creating the liens; and (3) it contained the promise of John C. Hennessey to pay said assessment liens as required by law. (It will be noted that Kate Hawley Hennessey did not sign the waiver.)

This waiver was executed by John C. Hennessey on July 26, 1912. The first default occurred on the first Monday in May, 1913, at which time there was a default in the semi-annual interest due at that time. The complaint was filed in the action on October 25, 1922, and summons issued thereon on October 25, 1922.

It is true that the waiver heretofore mentioned as having been executed by John C. Hennessey is the written instrument upon which alone there is authority to base a personal judgment against him in this action. It is also true that §386 Burns 1926, (Acts 1881 p. 240) provides that, "When any pleading is founded on a written instrument or on account, the original or a copy thereof must be filed with the pleading." While it is true that the plaintiff did not file the waiver in question with its complaint, yet the record shows that, on the day of trial and before starting the

trial, leave was asked of the trial court to file same and leave granted, after which it was introduced in evidence. It is true that the defendants Hennessey and Hennessey both objected in each instance and reserved their exceptions to the rulings of the court. The granting of leave to file the waiver by the trial court was within the sound discretion of the trial court and we find no abuse of the court's discretion. See *C. H. Maloney & Co.* v. *Whitney* (1919), 71 Ind. App. 157, 124 N. E. 496. We hold that the filing of the waiver amounted to an amendment of the complaint. But the appellants say that if we treat the complaint as amended by the filing of the waiver, which was filed on February 5, 1924, then the 10-year statute of limitations would have run. This contention might have to be considered if the filing of the waiver constituted a new cause of action. We hold that the filing of the waiver did not constitute a new cause of action and that it related back as of the time of the filing of the complaint on October 25, 1922. See *Terre Haute, etc., R. Co.* v. *Zehner* (1905), 166 Ind. 149, 160, 76 N. E. 169; *Shroyer* v. *Pittenger* (1902), 31 Ind. App. 158, 67 N. E. 475.

It is also to be remembered that this court will not reverse a judgment, in whole or in part, for any defect in a pleading which, by law, might be amended by the court below, but such defect shall be deemed to be amended in the court of appeal, nor shall any judgment be stayed or reversed, in whole or in part, where it shall appear to this court that the merits of the cause have been fairly tried and determined in the court below. §725 Burns 1926. See *Pittsburgh, etc., R. Co.* v. *Rushton* (1925), 90 Ind. App. 227, 149 N. E. 652.

The remaining question as to the personal judgment against John C. Hennessey is: Had the statute of limitations run against his promise to pay said assessments as contained in the waiver? The first default occurred on the first Monday of May, 1913,

and this cause of action was commenced on October 25, 1922. We hold that the statute of limitations as to said written promise of John C. Hennessey contained in said waiver had not run at the time of the commencement of this action.

In the fourth specification of errors relied on for reversal, the appellants say the court erred in overruling defendants' motion to require plaintiff to separate its complaint into two paragraphs, but appellants have not supported this specification by any points and authorities and have therefore waived the same under the holdings of this court.

We now take up the only other question not waived, which is the decree of foreclosure. In order to assist in arriving at an understanding of the statutes of limitation affecting and governing the foreclosure proceedings in this matter, we set out the following statutes:

Sections 5 and 6 of "An act concerning liens upon real estate, the foreclosure and expiration thereof." Approved March 6, 1909, Acts 1909, ch. 137, p. 334.

Section 5. "No action shall be brought or maintained in any of the courts of the state to foreclose or enforce the lien of any assessment for streets, sewers, sidewalks, ditches or other assessment for public improvements in any case when the last installment of any such assessment has been due and payable over five years, as shown by the record creating and evidencing such lien."

Section 6. "The lien of all assessments for streets, sewers, sidewalks, ditches, and other public improvements shall cease and expire five years from the time the same *and the several installments thereof are due and payable as shown* by the record creating and evidencing such lien." (Our italics.)

Section seven of ch. 172, p. 412, Acts 1909, approved March 8, 1909, being §10455 Burns 1926, reads as follows: "Failure to pay any installment of princi-

pal or interest where [when] the same is due shall bring all installments of principal yet unpaid forthwith due and payable: *Provided, such unpaid installment of principal or interest be not paid within the periods of grace herein provided for.* (Our italics.) If such city shall fail to collect any unpaid assessment or installment thereof when due, no liability shall thereby accrue against such city, but the owner of the bonds hereinbefore provided for, or in case no bonds have been issued, then the person to whom is due and owing the amount of such unpaid assessment for the performance of such work, shall have the right to proceed in any court of competent jurisdiction to enforce the liens or the unpaid assessments, recovering interest, costs and reasonable attorney's fee, and to have the proceeds of sale applied to his claim; Provided, when any person makes default in the payment of any installment of principal or interest, it shall be the duty of the treasurer to mail notice of such delinquency to such person, who shall have thirty days from the date when the same was payable to pay such installment, with a fee to such treasurer of twenty-five cents for sending such notice; And provided, further, *That no suit* shall be instituted to collect any unpaid assessment, whether a waiver has been signed or otherwise until thirty days after default, during which period of grace, such assessment, *or the unpaid installment thereof* may be paid to the treasurer without further penalty, *nor shall any such suit be instituted until fifteen days after service of notice upon the delinquent by the owner of such lien or assessment, during which period of grace, such assessment, or the unpaid installment thereof, may be paid to the treasurer without further penalty. A notice mailed to the person in whose name said lands are assessed, addressed to such person within said city, shall be deemed a sufficient notice.* In no case shall the attorney's fee exceed the amount of the assessment. If the amount due

is not paid or tendered within ten days, in cases in which the assessment exceeds fifty dollars, the attorney's fee shall not exceed ten per cent on the first one hundred dollars and five per cent on the excess thereof. *No action shall be maintained for such foreclosure which is not commenced within five years from the time the right of action accrues.*" (Our italics.)

Chapter 113, Acts 1923 p. 301, being §320 Burns 1926, is as follows: "An act concerning certain liens upon real estate, the foreclosure and expiration thereof, and repealing all laws in conflict therewith."

Section 1. "Be it enacted by the general assembly of the State of Indiana, That, from and after the taking effect of this act, no action shall be brought for the foreclosure of the lien of any assessment for streets, sewers, sidewalks, ditches and other public improvements, which is not commenced within five years from the time the right of action accrues: *Provided, however, that where any such assessment shall be payable in installments, such action may be brought at any time within fifteen years from the date of final approval of such assessment as shown by the record creating and evidencing such lien.*" (Our italics.)

Section 2. "All laws and parts of laws in conflict with the provisions of the act are hereby repealed."

While it is true that the last-quoted act does not govern this case on account of its date, yet it is set out in this opinion as throwing some light upon the legislative intent as expressed in the other sections of the statutes referred to herein. "While not conclusive upon the courts, a construction given to a statute by a subsequent legislature is entitled to consideration, and, if doubt and uncertainty exist as to the meaning of language used in a prior statute, such construction may be persuasive of the legislative intent." *Yarlott* v. *Brown* (1923), 192

Ind. 648, 138 N. E. 17; *Middletown* v. *Greeson* (1886), 106 Ind. 18, 5 N. E. 755.

The act of 1923 above cited clearly fixes the limitation as 15 years instead of five years as applied to assessments payable in installments and the date when the statute bars the action is 15 years from the date of the final approval of such assessment as shown by the record creating and evidencing such lien.

The precise question now before us as to the statute of limitations that shall govern this action was before this court in the case of *People's Trust & Savings Bank* v. *Hennessey* (1926), 153 N. E. (Ind. App.) 507. That case was before this court twice, it having been decided by the court first in *People's Trust & Savings Bank* v. *Hennessey*, November 6, 1925, 149 N. E. 356. In the last-mentioned decision, this court, upon similar facts to the instant case, held that the Statute of Limitations had not run. July 2, 1926, a petition for rehearing of that case was granted. On October 14, 1926, this court handed down its decision as shown in 153 N. E. 507, *supra*, reaching just the opposite conclusion on the statute of limitations as that reached in the 149 N. E. 365, *supra*, and holding that it had run. After the last decision, there was a petition to transfer to the Supreme Court, which was denied December 17, 1930.

Sections 5 and 6 above set out, ch. 137, p. 334, Acts 1909, approved March 6, 1909, became effective April 5, 1909. Chapter 172, p. 412, Acts 1909, above set out, became effective March 6, 1909. In point of time, at least, said §§5 and 6 became the later law. These matters of time might be important if there was an irreconcilable conflict between these sections of law. We believe there is no such conflict, and that these separate acts are capable of being so construed as to give full effect to each.

We recognize these settled rules of statutory construction:

(1) Repeals by implication are disfavored.

(2) Where two acts are seemingly repugnant, they should be construed, if possible, so that the latter will not operate as a repeal or modification of the former.

(3) If, by the application of every reasonable rule of construction, substantial harmony is found possible, then there is no irreconcilable conflict.

(4) The presumption is especially strong against an implied repeal of an act by another act of a later date at the same session of the Legislature.

(5) There is no inference that one act was intended to destroy another if they are on the same subject-matter and enacted at the same meeting of the Legislature, but, on the contrary, they should be construed, if possible, to give full effect to each.

(6) The purpose of all rules of statutory construction is to ascertain the legislative intent.

(7) Where two statutes are apparently inconsistent and passed at the same session of Legislature, the one dealing with the common subject in a more minute way will prevail over the one of a more general character.

Applying these rules of construction to the statutes in question, we conclude that, on the question of the statute of limitations, the exact question before us in this case, the legislative mind was focused upon that particular thing in §§5 and 6 above set out. It must be remembered that said §§5 and 6, *supra*, are a part of ch. 137, Acts 1909, and that the title to the act is "An act entitled an act concerning liens upon real estate, the foreclosure and expiration thereof." We call attention to the various sections of this act the substance of which

is as follows: Section 1. "Lien-Real Estate-Twenty Years-Record." Section 2. "Mortagage Lien Expiration-Record." Section 3. "Mechanic's Lien-One Year-Record." Section 4. "When Lien Expires-Record." Section 5. (The one under consideration.) "Street Assessment Lien-Five Years-Record." Section 6. (Also under consideration.) "When Lien Expires-Record." Section 7. "Action before Expiration." Section 8. "Pending Litigation."

These sections constitute all of this act, and are very short and directed to the exact question of limitations and the whole act covers less than two full pages of the acts of 1909. The exact question of limitations, and no other question, was, therefore, before the legislative mind.

We desire at this time to note that those portions of ch. 172, page 412, Acts 1909, above set out, which, at first reading, might be thought to be in irreconcilable conflict with said §§5 and 6 on the question of limitations, are found in §7 of said act. The act itself covers approximately 19 pages in the Acts of 1909, and deals with the general subject of public improvements in cities, as will be seen by an examination of its sections the substance of which is as follows: Section 1. "Cities-Public Improvements-Order-Notice-Materials." Section 2. "Contract-Cost-Intersections." Section 3. "Assessments-Extent Back-Lien." Section 4. "Assessment Roll-Notice-Hearing-Appeal." Section 5. "Duplicate Assessment Roll-Notice-Collections." Section 6. "Condemnations-Procedure-Fifth Class or Towns." Section 7. (Parts of which are under consideration.) "Failure to Pay Installment-Effect-Notice by Treasurer." Section 8. "Emergency."

In the later decision of this court in the case of *People's Trust & Savings Bank* v. *Hennessey* (1926), 153 N. E. (Ind. App.) 507, cited above, which decision we now disapprove and overrule, it was held that the provisions of §7, ch. 172, Acts 1909, controlled and

fixed the time when the statute of limitations began to run. This would be true only as hereinafter stated. It was, in effect, held that §5, ch. 137, Acts 1909 simply fixed a time within which a foreclosure could be maintained when there was a failure to pay the last installment when due as shown by the record, and limiting the time within which (five years) that action could be maintained. In other words, the court limited said §5 to cover only a default in the last payment. If the court's construction of these sections is correct, then §5 would be entirely useless and have no meaning, for, under that construction, if there was a default in the last payment, it could be and would be governed also by the limitation contained in the other act, §10455, *supra*. This construction renders meaningless §5 and does not give full effect thereto.

There is no need for these forced constructions. The limitation stated in said §5 is plain and says: "No action shall be brought or maintained in any of the courts of this state to foreclose or enforce the lien of an assessment for streets, sewers, sidewalks, ditches or other assessments for public improvements in any case where the last installment of any such assessment has been due and payable over five years as shown by the record creating and evidencing such lien." This clearly covers all installments, and they all are barred unless action is brought within 5 years from the date when the last installment is due and payable as shown by the record creating and evidencing such lien.

Section 7 of ch. 172, Acts 1909, *supra*, clearly is intended for the benefit of the bond-holder and lien-holder and as a penalty for a delinquent owner, and provides that failure to pay any installment when the same is due shall bring all installments of principal yet unpaid forthwith due and payable, provided such unpaid installment of principal or interest be not paid within the

period of grace provided for. In order to accelerate the running of the statute it is the duty of the treasurer to mail a notice of the delinquency to the delinquent person, who shall have 30 days from the date when the same was payable to pay such installment, and *he may pay only the delinquent installment, if he so desires, without further penalty. The owner of the lien or assessment must also serve 15 days' notice upon the delinquent owner, during which time, the owner may pay such assessment or the unpaid installment. No suit shall be instituted until the above notices are served.* Can the action be said to have accrued then until the notices are given? The same section also says that *"No action shall be maintained for such foreclosure which is not commenced within 5 years from the time the right of action accrues."* (Our italics.) Assume then that there is a default of the property owner, but no notices have been served, as required in the same section of the statute, covering the default. Can it then be said that the first part of the statute is self-executing so as to start the running of the statute? This certainly cannot be the correct construction of these acts. They must be construed in *pari materia* so as to give full effect, if possible, to each, and if we hold that the bar is fixed in §§5 and 6, *supra,* and that it may be accelerated by the default of the property owner and the act of the owner of the lien or assessment in serving the notice above mentioned in accordance with said §10455, *supra,* and that, in the event it is accelerated by such acts, the bar is five years from the date of default and notices and periods of grace, as fixed by §10455, *supra,* then we have construed these acts in *pari materia* and have given them the full and complete force and effect the Legislature had in mind.

To hold otherwise is to permit the defaulting property owner to take advantage of his own default. If we hold that, by his own default, he may start the running

of the statute without the notice required by the statute to be given by the owner of the lien or assessment, then we would place such a construction upon those statutes as will permit the property owner to default on one of his payments and start the running of the statute of limitations and thus bar a bond that may, upon its face, not mature for many years. These bonds are negotiable as inland bills of exchange. If, on the other hand, we construe these statutes in *pari materia* and hold that the statute begins to run from the date when the last installment becomes due as provided in said §5, *supra*, and that the only way to accelerate this is that there must be not only a default by the property owner but also that there *must be the notice by the owner of the lien or assessment* provided for by said §7 of ch. 172, above set forth, then the owner of the lien or assessment would have full knowledge of the default by reason of his having served the notice, and everybody's rights would be fully protected and the property owner could not then take advantage of his own default. This is not only the clear legislative intent of these acts, but we are aided in this construction by the Legislature itself by Acts 1923 p. 301, *supra*, which repeals and replaces §5, *supra*. Assume, for illustration, that, in nine months after a default in the payment of one of the installments, the owner of the lien or assessment should serve on the defaulting property owner the 15 days' notice provided for by §10455, *supra*, and that, within the 15 days, the latter paid the installment in question, could it be said that the cause of action on the whole bond issue remaining had accrued when the delinquency occurred. Certainly not. It must, therefore, be clear that §10455, *supra*, was intended to vest in the owner of the lien or assessment an option to declare the entire debt due upon default, and in the absence of his doing so and serving the 15-day notice, the bonds would mature according to the terms

on their face, and would only be barred by the provisions of §15, *supra*. Nonwaivered delinquent assessments are not the subject of litigation in the instant case, but the statutes above mentioned fully cover nonwaivered assessments.

It appears from the record and briefs that the first installment and one year's interest on the bonds in question came due November 1, 1912, and were paid, and that there was a default in the payment due November 1, 1913, which would be the second annual installment; therefore, the last of said installments would be due November 1, 1921. We hold that the statute of limitations would commence to run on November 1, 1921, and that the statute would fully run on November 1st, 1926, *unless, under the provisions of §10455, supra, this time was accelerated by the default of the property owner coupled with the 15-day notice provided therein to be served by the owner of the lien or assessment, in which event, the statute would run in accordance with said §10455, supra.* The complaint alleges, and the record shows, that 15 days prior to the filing of the complaint, which was filed October 25, 1922, the plaintiff gave notice to the Hennesseys. This notice was undoubtedly the 15-day notice required in §10455, *supra*. From the record before us, we would not be warranted in concluding that said notice had been served more than five years plus the statutory period of grace before the filing of the complaint. The trial court must have found that the said notice was not served a sufficient length of time to have barred the action under §10455, *supra*.

For the reasons stated herein, we are of the opinion that the statute of limitations in this case had not sufficiently run to bar either the foreclosure proceedings or the personal judgment against John C. Hennessey. We find no reversible error.

Judgment affirmed.