INDIANA TRUST COMPANY *v.* BEAGLEY, TREASURER, ET AL.

[No. 16,011. Filed June 29, 1938.]

*T. B. Cunningham,* for appellant.

*E. R. Cummings,* for appellees.

Wood, J.—The appellant brought suit by complaint in two paragraphs against the appellee Beagley, as the treasurer, and the appellee Towers, as the auditor, respectively, of Newton county, to enjoin them from selling certain land owned by appellant, at the delinquent tax sale in February, 1936, to satisfy unpaid installments of ditch assessment liens, levied against said land for the construction of two public drains. The appellees filed an answer in general denial to each paragraph of the complaint. It was stipulated that all defenses could be proved under this answer.

The cause was tried upon these issues, resulting in a finding and judgment in favor of the appellees. Appellant's motion for a new trial was overruled and it appeals, assigning this action of the court as the only error for reversal.

The facts are not in conflict. Those necessary to a determination of the questions presented may be summarized as follows: June 5, 1913, a petition was filed in the Newton Circuit Court for the establishment and construction of a public drain which was afterwards known and designated as the "Williams Ditch"; November 9, 1918, the circuit court approved and confirmed the report of the drainage commissioners fixing the amount of assessments for benefits and damages against the lands described in the report, and estab-

lished and ordered the drain constructed; the lands of appellant were assessed benefits in the sum of $3,203.55 on this drain; bonds were ordered issued to pay for the contract price of said drain in the total sum of $171,000, payable in ten equal annual installments; the series of bonds issued covered a period of time from December 1, 1922, to December 1, 1931; the amount of "Williams Ditch" bonds that matured December 1, 1931, was $17,000, and there was not a sufficient amount of money in the "Williams Ditch" fund to pay these bonds, so the county auditor issued a warrant for $14,000 against the general funds of the county to meet the deficit in the "Williams Ditch" fund; since that date this deficit has been reduced to $4,540.07, which is unpaid; the eighth, ninth, and tenth installments in the assessment of benefits against appellant's land for the construction of the "Williams Ditch" aggregating the sum of $1,043.07 were not paid and were delinquent and were certified by the county treasurer to the county auditor to be collected by that official as delinquent taxes were collected at the delinquent tax sale in February, 1936.

August 1, 1921, a petition was filed in the commissioner's court of Newton County, for the establishment and construction of a public drain which was afterwards known and designated as the "Jacob Rich Ditch"; February 6, 1922, the board of commissioners approved and confirmed the report of the drainage commissioners, fixing the amount of assessments for benefits and damages against the lands described in the report and ordered the drain established and constructed; the land of the appellant was assessed benefits in the sum of $1,726 for the construction of this drain; bonds were ordered issued to raise funds for the construction of the drain in the total sum of $8,700 payable in ten equal annual installments; the series of bonds issued covered

a period of time from June 1, 1923, to June 1, 1932; when the last bonds matured on the "Jacob Rich Ditch" there was not a sufficient amount of money in the "Jacob Rich Ditch" fund to pay them and the county auditor issued a warrant against the general fund of Newton County to meet the deficit in the "Jacob Rich Ditch" fund in order to pay said bonds, and that fund is indebted to Newton County in the sum of $1,296.73, which is unpaid; the seventh, eight, ninth, and tenth installments of the assessment of benefits against appellant's land for the construction of the "Jacob Rich Ditch," aggregating the sum of $1,581.62 with a penalty of $158.06, were not paid, were delinquent and it was certified by the county treasurer to the county auditor to be collected by that official as delinquent taxes are collected at the delinquent tax sale in February, 1936; the land of the appellant was advertised for sale for delinquent taxes at the delinquent tax sale in February, 1934 and 1935, but was not sold for want of a bid; all the bonds issued on the "Williams Ditch" had matured on December 1, 1931, were presented and fully paid and satisfied upon that date through the office of the county treasurer; all the bonds issued on the "Jacob Rich Ditch" had matured on June 1, 1932, were presented and fully paid and satisfied upon May 31, 1932, through the office of the county treasurer; all bonds on both drains were surrendered by the respective holders thereof to the county auditor and were cancelled; the holders of the original indebtedness or the holders of the bonds on both drains have been fully paid and satisfied and there is no outstanding indebtedness nor are there any unpaid bonds on either drain; the only delinquent taxes upon appellant's land, for which the sale was to be made in February, 1936, were the assessments for special benefits on the two drains, which were not paid on either of them; the appellee Towers succeeded

one Charles Adamson as county auditor; Adamson had been county auditor for eight years previous to 1933, and all of the bonds were paid during his administration as auditor; he, as such auditor, erroneously paid the bonds when they became due, not out of the respective ditch funds, but out of the county funds; the land of the appellant has never been sold for these delinquent assessments.

Appellant alleged as causes for a new trial, that the decision of the court was not sustained by sufficient evidence and that it was contrary to law.

It is appellant's contention, first, that at the time the appellee attempted to enforce the assessment liens against its land by making sale thereof at delinquent tax sale, the several installments of said assessments had been due and payable, as shown by the record creating and evidencing such liens, for more than five or fifteen years and that they had therefore expired by limitation of law. As supporting this contention, the appellant relies in part upon Chap. 342, Acts 1913, p. 931, being §§6187 to 6189, inclusive, Burns' R. S. 1926. This act was repealed by §81 of Chap. 264, Acts 1933, but by §79 of the Act of 1933 it was expressly provided that all pending drainage proceedings within the purview of the act should not be affected thereby, but should be continued to final determination and conclusion in accordance with the provisions of the act under which the proceedings were had; so that as to the bonds involved in the instant case, the act of 1913 is still in effect. But the facts in the case at bar do not bring it within the terms of this act. The evidence shows without conflict that neither of said assessments or the last installments thereof, upon which no payment had been made, had been due and payable over five years, as shown by the record creating or evidencing the liens in either of said drainage proceedings, as provided

by the Act of 1913, supra; so they had not expired by limitation of law under that act.

In further support of this contention, appellant cites and relies upon Chap. 113, Acts 1923, p. 301, which reads as follows:

"That from and after the taking effect of this act, no action shall be brought for the foreclosure of the lien of any assessment for streets, sewers, sidewalks, ditches and other public improvements, which is not commenced within five years from the time the right of action accrues: Provided, however, that where any such assessment shall be payable in installments, such action may be brought at any time within fifteen years from the date of the final approval of such assessment as shown by the record creating and evidencing such lien.

"All laws and parts of laws in conflict with the provisions of this act are hereby repealed."

This act clearly fixes the limitation as fifteen years, instead of five years as applied to assessments payable in installments and the date when the statute bars the action is fifteen years from the date of final approval of such assessment, as shown by the record creating and evidencing such lien. *Hennessey* v. *Breed, Elliott & Harrison, Inc.* (1931), 92 Ind. App. 165, 176 N. E. 251. While the query whether or not this statute, enacted after the issuing of the bonds in question, can apply to them has not been suggested in the brief of counsel, it has presented itself to the court. Our Supreme Court had this question before it for consideration in the case of *Sansberry* v. *Hughes* (1910), 174 Ind. 638, 640, 92 N. E. 783, where the court in discussing and disposing of the question used this language:

"Said appellant does not make the proper distinction between rights and remedies. In respect to substantive rights, conferred by law, or acquired by contract, there is no doubt of constitutional protection without modification or change. It is otherwise with a mere remedy. A remedy is nothing more than the means provided by law for the en-

forcement of rights, and is not of itself a right, except that when there exists but a single remedy for the enforcement of a vested right, such remedy cannot be wholly taken away, without providing some other reasonably convenient and efficient means of enforcement, without violating the Constitution, since a withdrawal of all legal means for the enforcement of a right is equivalent to a subversion of the right itself. But as pertaining to a mere remedy, there exists no doubt of legislative power to make such changes therein as to it seems fit, if in so doing it preserves or provides a reasonable means and opportunity for full enjoyment of the right. *Pritchard* v. *Spencer* (1851), 2 Ind. 486; *Dale* v. *Frisbie* (1877), 59 Ind. 530; *Flinn* v. *Parsons* (1878), 60 Ind. 573, 576; *Smith* v. *Bryan* (1881), 74 Ind. 515; *Board, etc.* v. *Center Twp.* (1896), 143 Ind. 391, 403; *Kepler* v. *Rinehart* (1904), 162 Ind. 504; Cooley Const. Lim. (6th ed.) 346.

"A statute of limitations is peculiarly within the operation of the rule, since it cannot, in any ordinary sense, be said to impair the obligation of contract. Hence it is firmly settled that the statute in force at the time suit is brought must govern, even though it shortens or lengthens the limitation for enforcement of the contract. *Webb* v. *Moore* (1865), 25 Ind. 4; *Jones* v. *Hopkins* (1866), 26 Ind. 450; *Dowell* v. *Talbot Paving Co.* (1894), 138 Ind. 675, 688; *State ex rel.* v. *Swope* (1855), 7 Ind. 91."

Assuming then, upon authority of this case, that the Act of 1923, *supra,* does apply to the bonds in question, then the lien of the assessment on the "Williams Ditch," which was finally approved November 9, 1918, had expired by limitation of time previous to February 12, 1936, while the lien of the assessment on the "Jacob Rich Ditch," which was finally approved February 6, 1922, had not expired by limitation of time, previous to February 12, 1936, which was the date fixed for the delinquent tax sale.

In the case of *Sansberry* v. *Cornelius* (1924), 82 Ind. App. 156, 145 N. E. 521, this court held, that an action commenced by the holder of the tax deed, to enforce a

lien for a ditch assessment under the Act of 1907, which was commenced more than five years after the last installment of such assessment was due and payable, was barred by the Act of 1913, *supra*. No reason occurs to us why the same rules applied in the construction and application of the Act of 1913 would not apply with equal force in the construction and application of the Act of 1923, in the case before us.

The second contention of the appellant is that the payment of the bonds out of the general fund of the county, when there was no legal obligation or duty resting on the county to so pay them, was a voluntary payment of a debt of a third party, and that, therefore, the county cannot be subrogated to the rights of the bondholders and reimburse itself by enforcing the liens against appellant's land, through the medium of a delinquent tax sale.

Both of the drains on which the assessments were made and bonds issued were established and constructed under and pursuant to Chap. 252, Acts 1907, p. 508, and amendments and acts supplemental thereto, adopted from time to time, previous to the orders of the respective courts in which the proceedings were had ordering the establishment and construction of the respective drains. Section 5½ of the Act of 1907, *supra*, as amended by Chap. 200, Acts of 1919, p. 775, being §6183 Burns' R. S. 1926, outlined in detail the course to be pursued in the issuing, sale and payment of bonds in drainage proceedings, including therein the course to be followed in collecting delinquent installments of assessments, out of which funds were to be derived for the payment of such bonds. Said section expressly provides, among other things, that, "they (the bonds) shall show upon their face for what purpose they were issued, and shall be payable from such assessments and not otherwise."

The evidence is undisputed that, at the time the bonds on each drain matured and were presented for payment, there was not a sufficient amount of money in the respective drainage funds of either of the drains, with which to pay said bonds; that the appellant was delinquent at that time in the payment of the installments of the assessments on its land; that the appellees or their predecessors in office had full knowledge of all these facts, but notwithstanding such facts, the evidence is uncontradicted that the auditor and treasurer of the county issued warrants upon, and paid them out of the general fund of the county, in payment and satisfaction of the bonds; that at that time the bonds were surrendered to the county auditor; that they were cancelled; that there was no agreement that they should be assigned to the county, or that it should in any way be subrogated to the rights of the holders of the bonds; that at the time of the proposed tax sales, the records of the county showed that the bonds were fully paid and satisfied and no longer outstanding as obligations in the respective drainage proceedings; that the payment of the bonds out of the general fund of the county was made without any obligation on its part to do so and was a voluntary payment. At the time of the payment, officials of the county were bound to know, as a matter of law, that said bonds were "payable from such assessments and not otherwise." There is no evidence of any fraud or deception having been practiced on the officers of the county by the appellant, inducing them to pay the bonds to the holders thereof.

In the case of *Fast* v. *State ex rel. Board of Commissioners of Allen County* (1915), 182 Ind. 606, 107 N. E. 465, the facts were, that the appellants had filed a petition before the board of commissioners of Allen County for the establishment and construction of a public drain. Pending the establishment of the

drain, the statute under which the proceeding was begun was repealed by the Act of 1907, so the proceeding was terminated and the drain was never established. At that time, there was due to the engineers and surveyors a considerable sum of money for services rendered and expenses incurred in the proceeding. They filed their claims with the board of commissioners of Allen County, which allowed them, and they were paid out of the general fund of the county. After the county council had made a sufficient appropriation of money from that fund for such purpose, the appellee brought suit against the appellants and their bondsmen to recover the sum of money thus paid out. The trial court held that the appellee was entitled to recover and rendered judgment accordingly. In reversing this judgment, the Supreme Court, among other things, said (p. 608) :

> "Appellee contends that by paying the claims in question Allen County became subrogated to the rights of the original claimants and is entitled in this action to recover from appellants the amount so paid from its treasury. The doctrine of subrogation is not founded on contract, express or implied, but on natural justice, and is enforced in behalf of sureties and others who are bound to pay for self-protection. Its application requires, first, that the party invoking the doctrine must have paid a debt due to a third person for the payment of which another was primarily liable; and second, that in paying said debt the person paying acted under the compulsion of saving himself from loss, and not as a mere volunteer.
>
> "The question first to be determined, then, is, What liability, if any, to pay the claims in question rested on Allen County?"

Then after reviewing the provisions of the statute under which the drain had been petitioned for, the court continued its opinion, saying (p. 609) :

> "The drainage statutes governing this proceeding nowhere authorized the payment from the county treasury of expenses incurred in connection with a

proposed drainage which was not established. The liability for such expenses rested solely with the petitioners and the county was under no obligation to pay them.

"At the trial of this cause, the court made a special finding of facts covering the issues heretofore set out and stated in its conclusions of law thereon that appellee was subrogated to the rights of all the claimants who filed claims before the board of commissioners of Allen County and should recover on the bonds set out in its complaint. This was error. Since Allen County was not obligated to pay the claims arising out of the drainage proceeding herein and had no legal authority so to do, it stands in the position of a volunteer and is not entitled to be subrogated to the rights of the original claimants."

Upon the authority of this case, we hold that when Newton County paid the bonds as they matured and were presented to it for payment out of its general fund, that it was a volunteer and is therefore not entitled to be subrogated to the rights of the original bondholders and should not be permitted to sell the land of the appellant at delinquent tax sale, for the purpose of obtaining funds from which to reimburse itself for such voluntary payments. See also, *State ex rel. Board of Commissioners of Hamilton County* v. *Kaufman* (1917), 186 Ind. 602, 117 N. E. 643. The judgment is reversed with instructions to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.