## STATE OF INDIANA v. MARTIN.

[No. 24,000.   Filed April 17, 1923.]

1. CONSTITUTIONAL LAW.—*Statutes.—Constitutionality.—Determination.*—While a court should hesitate to declare a law unconstitutional, yet it should not be led away from assuming that responsibility by phrases, clauses or adverbs found in opinions, which add no force to the plain statement that a court must be satisfied that a law, aided by all presumptions, is unconstitutional before it can declare it to be so.   p. 122.

2. CONSTITUTIONAL LAW.—*Judicial Questions.—Province of Legislature.*—Whether the legislature, in enacting a statute, has abridged some fundamental right of a citizen or has assumed its prerogative over subjects not within its province, are judicial questions, to be answered by determining whether the legislature has transcended its powers.   p. 122.

3. STATUTES.—*Construction.—Unambiguous Statutes.*—Where a statute is not ambiguous or uncertain in its meaning, there is no room for construction.   p. 122.

4. CONSTITUTIONAL LAW.—*Statutes.—Constitutionality.—Determination.—Effect of Law.*—While the judiciary, in passing upon the constitutionality of a statute, is not concerned with its purpose, yet its effect determines its validity, which is a judicial question.   p. 122.

5. CONSTITUTIONAL LAW.—*Master and Servant.—Payment of Wages.— Statutes.— Constitutionality.*— Section 7989e Burns' Supp. 1921, Acts 1915 p. 107, §3, providing that an employer shall, within seventy-two hours after any employe voluntarily quits or is discharged, pay to such employe in full the wages due him, provided demand is made therefor, and upon failure so to do the employer shall be liable to such employe for each

day until payment is made in a sum equal to the daily wage, and §7989f Burns' Supp. 1921, Acts 1915 p. 107, §4, providing that, upon failure to comply with §3, such employer shall be deemed guilty of a misdemeanor and punished by fine, are unconstitutional because they deprive persons of their property without due process of law and deny equal protection of the laws in violation of the Fourteenth amendment of the federal Constitution. p. 122.

From Vanderburg Circuit Court; *Philip C. Gould,* Judge.

Prosecution by the State of Indiana against James R. L. Martin. From an order sustaining defendant's motion to quash, the State appeals. *Affirmed.*

*U. S. Lesh,* Attorney-General, *George D. Heilman* and *Sumner Kenner,* for the State.

*Paul H. Schmidt,* for appellee.

MYERS, J.—Albert Darnell, by affidavit, charged appellee with unlawfully failing and refusing to pay him $27, wages alleged to be due him from appellee, after demand and within 72 hours after he had quit appellee's employment, in violation of §§7989e, 7989f Burns' Supp. 1921, Acts 1915 p. 107, §§3 and 4. The trial court sustained appellee's motion to quash, and that ruling is here assigned as error.

These sections read as follows: "Section 3.—Any person, firm, or corporation employing persons shall within seventy-two (72) hours after any employe voluntarily quits such service or is discharged, pay to such employe in full the wages due him to the time of quitting such service: *Provided,* Demand is made therefor and upon failure so to do, such person, firm or corporation shall be liable to such employe for each day until such payment is made in a sum equal to the daily wage of the employe." Section 4.—"Any person, firm or corporation, or officer of such company or corporation failing to comply with section three (3) of this act shall

be deemed guilty of a misdemeanor and shall upon conviction be punished by a fine of not less than one hundred dollars ($100.00) nor more than five hundred dollars ($500.00)."

The questions submitted for our consideration involve the constitutional validity of the foregoing statutes.

A cursory examination of the reported cases of this court will disclose that a number of statutes similar in general import to the ones here challenged have been considered and declared invalid because inhibited by our state Constitution, or as being within the restraints of our federal Constitution or its laws and treaties passed and made pursuant thereto.

Before calling attention to some of these cases, it may be well to note that, while a court should hesitate to declare a law unconstitutional, as it should to render any decision involving important consequences without careful consideration, yet it should not be led away from assuming such responsibility by phrases, clauses, or by the accumulation of the adverbs, "clearly," "plainly," "palpably," "unmistakably," and "undoubtedly," found in many able opinions, but which add no force to the plain statement that a court must be satisfied that a law, aided by all presumptions, is unconstitutional before it can declare it to be so. Whether the legislature has abridged some fundamental right of a citizen or has assumed its prerogative over subjects not within its province, are certainly judicial questions. Being judicial questions, then the inquiry must be ordinarily: Has the legislature transcended its powers?

The sections of the statute before us and asserted to be unconstitutional are not ambiguous or uncertain in their meaning. Hence there is no room for construction. There can be no question as to the legislative intent. For more than 35 years the

general assembly of this state has been exceedingly active in passing laws pertaining to contracts between employer and employe, and especially those involving wages. Some of these laws on various theories have been sustained by this court, while many have been stricken down.

It would seem advisable at this point to briefly refer to several of these enactments. It will be remembered that in an action for the recovery of wages for manual labor and also for penalties and attorneys' fees, under §§1 and 2, Acts 1885 p. 36, these sections were held invalid, in that they affected only "every company, corporation or association" as employers, and the employes of such employers "engaged in manual or mechanical labor." Hence, they violated the Fourteenth Amendment to the federal Constitution. *Toledo, etc., R. Co.* v. *Long* (1907), 169 Ind. 316, 124 Am. St. 226.

Furthermore, §§1 and 4, Acts 1887 p. 13, providing for the payment of the amount due an employe in money, and a penalty of $1 per day after a ten-day demand, not to exceed the amount due, and reasonable attorneys' fees, were challenged in an action to test the validity of a contract wherein an employe expressly waived his right to demand and receive his wages in money for mining coal. These sections were held valid as against the contention that the act restricted or abridged the right to contract, as well as against the claim of unreasonable and arbitrary classification inhibited by Art. 1, §23, of our Bill of Rights. *Hancock* v. *Yaden* (1890), 121 Ind. 366, 6 L. R. A. 576, 16 Am. St. 396. These sections were again before this court in the case of *Seelyville Coal, etc., Co.* v. *McGlosson* (1906), 166 Ind. 561, 117 Am. St. 396, 9 Ann. Cas. 234, and again sustained, but the court, in speaking of the penalty provided in §4, said: "The amount of damages allowed to be assessed, however, can in no event

exceed double the amount of the wages due the employe. The statute in this respect is reasonable and the amount of the exemplary damages assessed can neither be said to be excessive nor oppressive." See, also, *Macbeth Evans Glass Co.* v. *Amama* (1911), 176 Ind. 1; *Macbeth Evans Glass Co.* v. *Van Blarican* (1911), 176 Ind. 69; *Macbeth Evans Glass Co.* v. *Jones* (1911), 176 Ind. 221.

In the case of *Republic Iron, etc., Co.* v. *State* (1903), 160 Ind. 379, 62 L. R. A. 136, the court had under consideration §§1 and 2, Acts 1899 p. 193 (§§7984, 7987 Burns 1914). Section 1 required weekly payment of wages, and authorized the labor commissioners of the state, after notice and hearing, to exempt any of the employers mentioned in the statute whose employes prefer a less frequent payment. Section 2 authorized the state chief inspector or any person interested, by a suit in the name of the state, to enforce compliance with §1, and further provided for the collection of a penalty of fifty per centum of the amount of the judgment to be paid into the school fund of the state. These sections were held to be in violation of Art. 1, §1, of the state Constitution, and §1 of the Fourteenth Amendment to the federal Constitution, which denies a state the power to deprive a person of life, liberty, or property without due process of law. It was the unreasonable restrictive features that condemned these sections and distinguished them from the Act of 1887, although Acts 1899 p. 193, §4, §7987 Burns 1914, which prohibited an employe from assigning his future wages, was held valid, on the ground that it involved a matter of public interest. *International Text-Book Co.* v. *Weissinger* (1902), 160 Ind. 349, 65 L. R. A. 599, 98 Am. St. 334. See, also, *Chicago, etc., R. Co.* v. *Ebersole* (1910), 173 Ind. 332.

In 1901 the general assembly passed what was commonly called the minimum wage law (Acts 1901 p.

282). The constitutionality of that law was the issue in the case of *Street* v. *Varney Electrical Supply Co.* (1903), 160 Ind. 338, 61 L. R. A. 154, 98 Am. St. 325. Section 1 fixed the minimum wage rate of 20 cents per hour for "unskilled labor employed upon any public work of the state, counties, cities, and towns," prohibited the employment of such laborers at a less rate, and fixed penalties for failure to comply therewith. Street sought to collect wages allowed by this statute, including a reasonable attorney's fee, together with a penalty not exceeding double the amount of wages due. This law in that suit was declared unconstitutional for the reason that counties, cities and towns are municipal and political subdivisions of the state, and the fixing of the minimum price for unskilled labor was a legislative interference with their liberty to contract, and therefore in violation of §§1 and 23 of Article 1 of the state Constitution, and of §1, of the Fourteenth Amendment to the federal Constitution.

Moreover, at this same session (Acts 1901 p. 548) an act was passed prohibiting the assignment of wages earned or unearned by any employe or laborer in coal mines, or of the issuance of any token, ticket or device by merchants to such employes payable or redeemable in anything other than money. This statute was treated as "an enactment operative only upon two classes of persons, merchants and employes in coal mines," and therefore a grant of special privileges and immunities to a favored class of citizens, which is forbidden by Art. 1, §23, Constitution of Indiana. *Dixon* v. *Poe* (1902), 159 Ind. 492, 60 L. R. A. 308, 95 Am. St. 309.

The act of 1909, (Acts 1909 p. 76, §7999 Burns 1914) prohibited a married man, the head of a family, from assigning his wages or salary without the consent of his wife. This section was held valid as against the assertion that it was in conflict with Art. 1, §1, of our

state Constitution, and the Fourteenth Amendment to the federal Constitution, upon the theory that—"It is evident that in enacting §4, *supra,* of the act of 1909, our legislature was controlled by the same purpose which led the framers of our Constitution to command, by §22 of our Bill of Rights (Art. 1, §22, Constitution), that liberal exemption laws be enacted, and which inspired the subsequent enactment of our many statutes designed for the protection of the wives and children of resident householders." *Cleveland, etc., R. Co.* v. *Marshall* (1914), 182 Ind. 280, Ann. Cas. 1917A 756.

Again in 1911, (Acts 1911 p. 446; §§2683a, 2683d Burns 1914) an act was passed entitled "An act relating to the employes and employer of railroad companies." By this act (§3) any railroad company, doing business in this state, employing men, was required to pay any employe within 72 hours after such employe voluntarily quits or.is discharged from such service, all wages then due, and· for failure to pay after demand, the company was liable to such employe for each day thereafter an additional sum equal to his daily wage. Section 3 of this act was involved in the case of *Cleveland, etc., R. Co.* v. *Schuler* (1914), 182 Ind. 57, L. R. A. 1915A 884, which was an action by an employe against the company to recover for services and the statutory penalty. In that case the company took the position that the act was unconstitutional and void, for the reason that it was class legislation. Art. 1, §23, Indiana Constitution. The opinion quotes much of the language of Mr. Justice Brewer in the case of *Gulf, etc., R. Co.* v. *Ellis* (1897), 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, and, following the rule stated in *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 674, 14 L. R. A. (N. S.) 418, held that there was nothing in the act then under consideration "which suggests a valid basis for

the classification which it makes," and therefore in that respect arbitrary and consequently unconstitutional and void.

The state, in the present appeal, relies on the rulings announced in *Hancock* v. *Yaden, supra, International Text-Book Co.* v. *Weissinger, supra,* and *Seelyville Coal Co.* v. *McGlosson, supra,* but, as we see the case at bar, we are not concerned with the questions of restricted right to contract, or arbitrary classification, or the payment of wages in money, which were pivotal points in those cases. Conceding that the legislature has power to regulate the payment of wages and to require that they be paid in money, yet such legislation must be reasonable in its operation and not unduly oppressive upon the persons whom it affects. *Lawton* v. *Steele* (1894), 152 U. S. 133, 137, 14 Sup. Ct. 499, 38 L. Ed. 385; *Republic Iron, etc., Co.* v. *State, supra.*

In the McGlosson case, it is clearly made to appear that the exemplary damages allowed by the act of 1887 were neither excessive nor oppressive, and hence that case in that respect is distinguishable from the case at bar, where it is apparent that the challenged regulations are exceptionally arbitrary and laden with such intimidating force—civil penalties and criminal prosecution—that would cause many and, we may say, a large majority of persons to accede knowingly to unjust demands made upon them, rather than to assert their legal rights by questioning the legislative power to enact the law, thereby, during the delay for this purpose, assuming the risk of accumulating penalties, as well as incurring the expense of carrying forward the litigation necessary to a final determination of such power.

The far-reaching power of the legislature to enact laws that will prevent fraud and oppression, and promote the general welfare, is well known. Hence, the

plausible argument of the state, persuasive of the view that the legislative intention to prevent oppression of the wage-earner, a matter of general public interest, is clear from the language employed in the exercise of a wide discretion affecting a public interest and of the measures necessary for the protection of that interest. This contention is based upon what is known as the police power. But it will serve no useful purpose for us at this time to enter into a discussion of what the legislature might or might not do under that power. However, it has been well said that "the State is bound to recognize, even in the exercise of its police power, the right of all persons to the equal protection of the laws, and to the security afforded by due process of law." *Republic Iron, etc., Co.* v. *State, supra.*

So that, while the judiciary, in passing upon the constitutional validity of a statute, is not concerned with its purpose, yet its effect determines its validity, which is a judicial question.

The doctrine ruling the case of *Superior Laundry Company* v. *Rose* (1923), *post* 138, 137 N. E. 761, is exceedingly supportive of the general conclusion adopted in the instant case. In that case the court had under consideration the constitutional validity of chapter 27, Acts 1913 p. 47. That act related to the payment of wages. A failure to make payments, as in the act provided, subjected the employer to an additional liability of ten per cent. of the amount due for each day such amount remained unpaid, together with reasonable attorneys' fees. Rose brought suit to collect unpaid wages, plus the ten per cent. denominated liquidated damages and attorneys' fees. The opinion in that case uses the following language: "The penalty is not proportioned to the amount of wages withheld, but is without limit as to the time during which it shall continue to accumulate, or as to the total amount. This is not 'equal

protection of the law,' nor does it afford the employer
'due process of law,' but arbitrarily deprives him of
property by threatening such dire consequences if he
shall litigate a claim for wages and not be entirely suc-
cessful that he may fear to refuse a demand, even
though convinced that it is unfounded and unjust." In
support of this ruling, among the cases cited is *Ex parte
Young* (1907), 209 U. S. 123, 28 Sup. Ct. 441, 52 L.
Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764,
wherein the court, after approving the right of the
state to impose penalties as will tend to compel obedi-
ence to its mandates, then observes: "That when the
penalties for disobedience are by fines so enormous and
imprisonment so severe as to intimidate the company
and its officers from resorting to the courts to test the
validity of the legislation, the result is the same as if the
law in terms prohibited the company from seeking judi-
cial construction of laws which deeply affect its rights."

The Fourteenth Amendment to the federal Constitu-
tion expressly prohibits every state from passing any
law that will deprive any person of life, liberty or prop-
erty without due process of law, or that will deny to
any person within its jurisdiction the equal protection
of the laws. It may be said that the statutes now in
question operate upon all alike situated, but that is
not enough to take them without the constitutional in-
hibition. They must not subject an individual to an
arbitrary and unreasonable exercise of the powers of
government by assessing penalties greatly out of pro-
portion to the actual damages sustained, whereby he
may be unduly oppressed by virtue of such authority.
While states have a wide latitude of discretion in mat-
ters of this character, yet "where the penalty pre-
scribed is so severe and oppressive as to be wholly
disproportioned to the offense and obviously unreason-

able," the provision prescribing it must yield to the charge of denying constitutional liberty. *St. Louis, I. Mt. & So. Ry. Co.* v. *Williams* (1919), 251 U. S. 63, 40 Sup. Ct. 71, 64 L. Ed. 139.

We are convinced that such is the effect of the law in question. Therefore, the conclusion must follow that the state thereby transcended its powers and by that means denied to its citizens thus affected the benefit of the fundamental right of "due process" and "equal protection of the laws," guaranteed by the Fourteenth Amendment. Hence, we approve of the ruling of the trial court in sustaining the motion to quash the affidavit in this case.

Judgment affirmed.