**In re Herbert George WHYTE, Debtor.**

**Paul CHAEL, Trustee, Plaintiff,**

v.

**Herbert George WHYTE, United States of America, Walgreen Company and First Federal Savings Bank of Indiana, Defendants.**

**Bankruptcy No. 90–60289.**
**Adv. No. 90–6115.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division at Gary/Lafayette.

Sept. 20, 1993.

William Walden, Munster, IN, for debtor.

Paul Chael, Crown Point, IN, plaintiff pro se.

Robin Morlock, U.S. Attorney's Office, Dyer, IN, R. Brian Woodward, Merrillville, IN, for defendants.

## MEMORANDUM OPINION AND ORDER

KENT LINDQUIST, Chief Judge.

### I

### Statement of Proceedings and Background

This Adversary Proceeding is before the Court on a Motion filed on October 27, 1992 by the United States of America on behalf of its Agency the Internal Revenue Service (hereinafter: "IRS") to Alter Judgment or for New Trial (hereinafter: "Motion"). The Motion of the IRS is directed to the Court's Findings of Fact, Conclusions of Law and Judgment dated October 9, 1992, and entered of record on October 14, 1992 (hereinafter: "Judgment").

The Judgment arose out of an interpleader complaint filed by Paul Chael in this case, as the former Chapter 13 Trustee of the Debtor (hereinafter: "Trustee"), under former Case No. 89–61704 which was dismissed. The interplead funds had been paid to the Trustee by Walgreens Co., as lessee of a certain written lease between it and the Debtor as lessor during the course of the previous Chapter 13 case. The IRS and First Federal Savings Bank of Indiana (hereinafter: "First Federal") both asserted a first and prior lien in the interplead funds. This Adversary Proceeding was submitted to the Court as an Agreed Case by virtue of a Joint Signed Stipulation of Facts and Issues to be Briefed filed by the IRS and First Federal on February 14, 1991.

The Judgment determined the respective lien rights of the IRS and First Federal in these rentals. The Judgment determined that pursuant to Indiana law, rents to accrue in the future arising out of a written lease are generally classified as real estate, or "chattels real", while rentals that have accrued are classified as intangible personal property in the nature of a debt or chose in action. Judgment, pp. 60–62. The Judg-

ment thus decided that rents that had accrued or had actually become due and owing by Walgreens to the Debtor were in the nature of personalty, rather than realty, and that although the IRS had filed a Notice of Federal Tax Lien with the Lake County, Indiana, Recorder on December 20, 1988, (hereinafter: "Notice"), that Notice did not effect a tax lien in the accrued rentals that was prior to the security interest (Assignment of Rentals) of First Federal, because I.C. 36–2–11–21(a), which had been enacted by the State of Indiana pursuant to 26 U.S.C. § 6323(f)(1)(A), had been generally repealed by P.L. 338–1987, Sec. 2 on May 4, 1987. That statutory provision was repealed and replaced by I.C. 36–2–11–25 pursuant to P.L. 338–1987, Sec. 1, on May 4, 1987, or prior to the filing of the Notice. Indiana Code 36–2–11–25(a) as constituted at the time the IRS filed its Notice on December 20, 1988, only makes direct reference to perfecting a tax lien in real property and not to personal property. Thus, the Court concluded in its Judgment that in order for the IRS to perfect a tax lien as to personalty of the Debtor after May 4, 1987, i.e. the accrued rents paid by Walgreens to the Trustee of the Debtor, the IRS would have to file its Notice of Federal Tax Lien with the Clerk of the District Court pursuant to 26 U.S.C. § 6323(f)(1)(B), as the State of Indiana by the repeal of I.C. 36–2–11–21(a) no longer had designated one office that met the requirements of 26 U.S.C. § 6323(f)(1)(A)(ii), as to the filing of a Notice of Federal Tax Lien in personalty at the time the IRS had filed its Notice with the Lake County, Indiana, Recorder.

The IRS asserted that as surmised by the Court's Judgment, as First Federal had stipulated, that the IRS had filed its Notice of federal tax lien on December 20, 1988 in the "proper federal tax lien index". *See,* Stipulation filed February 14, 1991, ¶ 11. Thus, it asserts that this issue was not briefed by it, although First Federal raised this issue in its brief. *See,* IRS Motion, pp. 2–5.

As a consequence, the IRS and First Federal filed their Mutual Waiver [of] Certain Arguments and Agreed Order which the Court approved on January 8, 1993, wherein it was agreed between the parties that First Federal waived any objection to the IRS' motion or on appeal, that the IRS should have anticipated the need to brief the issue of whether its Notice of liens must be filed with the Clerk of the United States District Court.

The brief of the IRS filed on January 15, 1993 in support of its Motion asserts that the proper place to file a Notice of Federal Tax Lien as to personalty subsequent to May 4, 1987, or pursuant to I.C. 36–2–11–25(a), was the Lake County, Indiana, Recorder. In the alternative the IRS asserts at I.C. 36–2–11–25, Sec. 2 was only a partial repealer of I.C. 36–2–11–21(a), leaving that provision in effect as to personalty.

It should also be noted that in its brief the IRS withdrew its prior argument that the property in issue constituted real property, and concurred with the Court's Judgment that the status or nature of the property should be determined subsequent to the filing of the lien. *See,* IRS Brief, p. 23. However, the IRS asserts that the status or nature of the rentals should be determined as of the time that the Trustee's interpleader complaint was filed and not at the time the rentals accrued. That is, the interplead funds should be viewed as a bank account, i.e. the bank account maintained by the Trustee for the accrued rentals received by the Trustee from Walgreens during the course of the prior chapter 13 case, rather than as accrued rents timely paid by Walgreens to the Debtor's Chapter 13 Trustee. Thus, the IRS asserts that at the time the Debtor's prior Chapter 13 case was dismissed, the Debtor did not hold a chose in action versus Walgreens for accrued rents under a lease as Walgreens had satisfied its obligation to the Debtor when it had previously paid the rents to the Trustee. IRS Brief, pp. 23–24.

## II

### *Conclusions of Law and Discussion*

Indiana Code 36–2–11–25(a) which was in effect when the IRS filed its Notice on December 20, 1988 stated as follows:

Sec. 25. (a) This section applies to a lien arising under Section 107 of the Com-

prehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601 et seq. (commonly known as the Superfund Law) *and to any other federal lien on real property provided for in the statutes or regulations of the United States.* In order for a lien covered by this section to be perfected, notice of the lien must be filed in the office of the recorder of the county in which the real property subject to the lien is located.

(Emphasis supplied).[1]

Indiana Code 36–2–11–25 was added by P.L. 338–1987, Sec. 1, May 4, 1987. Section 2 of P.L. 338–1987 stated as follows:

"I.C. 26–2–11–21 IS REPEALED."

Indiana Code 36–2–11–21(a) which was repealed by P.L. 338–1987, Sec. 2, stated as follows:

Sec. 21. (a) Notices of liens for federal taxes and certificates discharging those liens may be filed in the office of the recorder of the county in which the *property* subject to the lien is located. (Emphasis supplied).[2]

It is noted that I.C. 36–2–11–25(a) expressly and unequivocally talks only in terms of "real property" and not in terms of "real property and personal property", or "property" generally, while repealed I.C. 36–2–11–21(a), and its predecessor, Acts 1925, Chapter 50, Section 1, talk generally in terms of "property" without distinguishing between "real property" or "personal property."

The court would also note that subsequent to the Court's Judgment, the Indiana Legislature Amended 36–2–11–25(a) to now read as follows:

(a) This section applies to:

(1) a lien arising under Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601 et seq. (commonly known as the Superfund Law); and

(2) any other federal lien on *real property or any federal tax lien on personal property* provided for in the statutes or regulations of the United States.

In order for a lien covered by this section to be perfected, notice of the lien must be filed in the office of the recorder of the county in which the *real or personal property* subject to the lien is located.

---

1. 42 U.S.C. § 9601 referred to in I.C. 36–2–11–25(a) is the Comprehensive Environmental Response, Compensation, and Liability Act of 1980. "CERCLA", 42 U.S.C. § 9601, *et seq.* Section 9607(*l*)(1) thereof provides that certain costs and damages for which a person is liable to the United States under § 9607(a) shall be a lien in favor of the United States upon all real property and rights to such property. Section 9607(*l*)(3) provides as follows:

(3) Notice and validity. The lien imposed by this subsection shall be subject to the rights of any purchaser, holder of a security interest, or judgment lien creditor whose interest is perfected under applicable State law before notice of the lien has been filed in the appropriate office within the State (or county or other governmental subdivision), as designated by State law, in which the real property subject to the lien is located. Any such purchaser, holder of a security interest, or judgment lien creditor shall be afforded the same protections against the lien imposed by this subsection as are afforded under State law against a judgment lien which arises out of an unsecured obligation and which arises as of the time of the filing of the notice of the lien imposed by this subsection. If the State has not by law designated one office for the receipt of such notices of liens,

the notice shall be filed in the office of the clerk of the United States district court for the district in which the real property is located. For purposes of this subsection, the terms "purchaser" and "security interest" shall have the definitions provided under section 6323(h) of the Internal Revenue Code of 1954 [26 USCS § 6323(h)].

It is clear that § 9607 only applies to real property and the rights thereto. That portion of Section 9607(*l*)(3) relating to the place to file a Notice of Lien is essentially the same as 26 U.S.C.S. § 6323(f)(1)(A)(i) and Subsection (B).

2. The predecessor to I.C. 36–2–11–21(a) was found at Acts 1925, Chapter 50, Section 1, and provided as follows:

Internal Revenue Tax Liens—Filing with Recorder.

Section 1. *Be it enacted by the general assembly of the State of Indiana,* That notices of liens for internal revenue taxes, payable to the United States of America, and certificates discharging such liens, may be filed in the office of the county recorder of the county within which the *property* subject to the lien is situated. (Emphasis supplied).

It is observed this statute, like its successor I.C. 36–2–11–21(a) also referred generally to "property", unlike I.C. 36–2–11–25(a).

1993 Ind. P.L. 256 (April 27, 1993) (Emphasis supplied).

█ Certainly this amendment makes it clear that federal tax liens in both real and personal property may now be perfected by filing the notice thereof with the county recorder's office. This court is aware that Indiana courts have allowed evidence of an act's amendment to influence their interpretation where the prior act was ambiguous. *See Oster v. Department of Treasury*, 219 Ind. 313, 317, 37 N.E.2d 528, 529 (1941); *Yarlott v. Brown*, 192 Ind. 648, 138 N.E. 17 (1923); *Taylor v. State ex rel. Ogle*, 168 Ind. 294, 80 N.E. 849 (1907); *Hennessey v. Breed, Elliott and Harrison, Inc.*, 92 Ind.App. 165, 176 N.E. 251 (1931). However, a subsequent amendment to an *unambiguous* act cannot influence the Court's interpretation thereof.

Indiana Code 36–2–11–25(a), and its predecessors I.C. 36–2–11–21(a), and Acts 1925, Chapter 50, Section 1, as well as its successor, 1993 Ind. P.L. 256, were all enacted pursuant to 26 U.S.C. § 6323(f)(1) which provides as follows:

(f) Place for filing notice; form.

(1) *Place for filing.* The *notice* referred to in subsection (a) *shall* be filed—

(A) Under State laws.

(i) Real property. In the case of real property, *in one office* within the State (or the county, or other governmental subdivision), as *designated by the laws of such State*, in which the property subject to the lien is situated; and

(ii) *Personal property.* In the case of personal property, *whether tangible or intangible, in one office with the State* (or the county, or other governmental subdivision), *as designated by the laws of such State*, in which the property subject to the lien is situated; or

(B) *With clerk of district court.* In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, *whenever the State has not by law designated one office which meets the requirements of subparagraph (A);* or

(C) With Recorder of Deeds of the District of Columbia. In the office of the Recorder of Deeds of the District of Columbia, if the property subject to the lien is situated in the District of Columbia. (Emphasis supplied).

█ In construing a federal statute such as 26 U.S.C. § 6323(f)(1), this Court is bound by the Federal Common Law Rules of Statutory Construction. As stated in *Penn. Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 557, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990), the construction of a statute is guided by "the fundamental. Cannon that statutory interpretation begins with the language of the statute itself." *See also, In re Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). "[My] sole function ... is to enforce [the statute] according to its terms." *Id.*, at 241, 109 S.Ct. at 1030 (*citing, Caminetti v. U.S.*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

The "plain language" doctrine is widely accepted and applied by a majority of the current Supreme Court. *See, e.g., Patterson v. Shumate*, — U.S. —, — – —, 112 S.Ct. 2242, 2248–51, 119 L.Ed.2d 519 (1992); *Connecticut Nat'l Bank v. Germain*, — U.S. —, — – —, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992); *U.S. v. Nordic Village, Inc.*, — U.S. —, —, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *Union Bank v. Wolas*, — U.S. —, —, 112 S.Ct. 527, 530, 116 L.Ed.2d 514 (1991); *Board of Governors v. MCorp. Financial, Inc.*, — U.S. —, — – —, 112 S.Ct. 459, 465–66, 116 L.Ed.2d 358 (1991).

█ Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry their "ordinary, contemporary, common meaning." *Pioneer Inv. Services v. Brunswick Associates Ltd. Part.*, — U.S. —, —, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993) (*quoting, Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979)). The Internal Revenue Code does not attempt to define the terms "real property" and "personal property" as set out in 26 U.S.C. § 6323(f)(1)(A)(i) and (ii). Thus, the Court will apply the ordinary, con-

temporary, common meanings of "real property" and "personal property" as used therein.

It is observed that § 6323(f)(1)(A)(i) expressly refers only to *real* property, while § 6323(f)(1)(A)(ii) expressly refers to only *personal* property, whether that personal property is tangible or intangible. Both of these subsections are clear and unequivocal. Both subsections clearly make specific reference to, and distinguish between real property and personal property. There is no question, and the IRS concedes that the interplead funds are personal property, although it differs with the Court in asserting that they should be characterized as a mere bank account of the former chapter 13 Trustee, as opposed to accrued rentals timely paid by Walgreens to the Trustee.

Section 6323(f)(1)(B) is likewise clear and unequivocal, in that it provides that where a state does not designate one office as provided for in § 6323(f)(1)(A)(i) or (ii), then the place of filing for a Notice of lien "shall" be the clerk of the District Court.

■ The plain language of § 6323(f)(1)(A)(ii) and § 6323(f)(1)(B) clearly leave no room for judicial construction as to the place where a Notice of Federal Tax Lien is to be filed as to tangible or intangible personal property. It is either: (1) at one office designated by the State of Indiana, or (2) if no such office is designated by the State, then the clerk of the District Court in the District where the tangible or intangible property is located.

Next, the Court must construe I.C. 36-2-11-25(a) and the repealer Section of P.L. 338-1987, Sec. 2 which repealed prior I.C. 36-2-11-21(a).

■ It has been generally accepted that the State Courts are the final arbitrators of the State's own laws. *Wardius v. Oregon,* 412 U.S. 470, 477, 93 S.Ct. 2208, 2213, 37 L.Ed.2d 82 (1973).

■ In applying a state statute, federal courts are bound by the construction given a statute by the highest court within the state. *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 65, 101 S.Ct. 2176, 2180-81, 68 L.Ed.2d 671 (1981); *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1982); *Garner v. Louisiana,* 368 U.S. 157, 169, 82 S.Ct. 248, 254-55, 7 L.Ed.2d 207 (1961); *Kifer v. Liberty Mutual Ins. Co.,* 777 F.2d 1325, 1329 (8th Cir.1985); *Auerbach v. Rettaliata,* 765 F.2d 350, 352 (2d Cir.1985). As the Supreme Court noted: "It is not our function to construe a state statute contrary to the construction given to it by the highest court of a State." *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 838, 98 S.Ct. 1535, 1541, 56 L.Ed.2d 1 (1978), *citing, O'Brien v. Skinner,* 414 U.S. 524, 531, 94 S.Ct. 740, 743-44, 38 L.Ed.2d 702 (1974).

■ Legislative intent is a matter of state law on which the highest court in the state speaks with finality. *Exxon Corp. v. Eagerton,* 462 U.S. 176, 182, 103 S.Ct. 2296, 2301, 76 L.Ed.2d 497 (1983); *Mulhaney v. Wilburn,* 421 U.S. 684, 690-92, 95 S.Ct. 1881, 1885-86, 44 L.Ed.2d 508 (1975), *citing, Murdock v. City of Memphis,* 20 Wall. 590, 22 L.Ed. 429 (1875); *Della Grotta v. State,* 781 F.2d 343, 346 (1st Cir.1986).

■ The rule is that state courts have the right to construe their own statutes. *Bank of Heflin v. Miles,* 621 F.2d 108, 113 (5th Cir.1980). Federal courts are bound by that state's interpretation. *Id.* at 114. *Cotton States Mutual Insurance Company v. J.O. Anderson, Jr.,* 749 F.2d 663, 667 (11th Cir. 1984). *See also, Sanchez v. United States,* 696 F.2d 213, 216 (2d Cir.1982) ("To comply with the principle of comity which undergirds our federal system, we are obliged to give full effect to decisions of New York's highest court on issues involving the application of New York law.").

■ When there are no reported Indiana decisions on the issue in controversy, or the Court is faced with a state law issue that is unsettled, the Federal Court must look to all available data and adopt a rule which it believes the Indiana Supreme Court would adopt. *Green v. J.C. Penney Auto Ins. Co., Inc.,* 806 F.2d 759, 761 (7th Cir.1986). *Heinhold v. Bishop Motor Exp., Inc.,* 660 F.Supp. 382, 384 (N.D.Ind.1987); *Neofes v. Robertshaw Controls Co.,* 409 F.Supp. 1376, 1379-80, 19 U.C.C.Rep. 492 (S.D.Ind.1976), *citing,*

West v. American Telephone and Telegraph Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). In making such a decision without a discernible doctrinal trend, the Court may reasonably assume that the state court will follow the rule that appears to best effectuate the policies that underly the rule. Bowen v. U.S., 570 F.2d 1311, 1322 (7th Cir.1978).

Thus, the Court must first look to State law in determining whether the Indiana legislature in enacting a statute that implements 26 U.S.C. § 6323(f)(1) intended that a Notice of Federal Tax Lien as to tangible and intangible personal property is to be filed with the County Recorder or with the Clerk of the District Court.

Unfortunately, there have been no Indiana decisions interpreting I.C. 36–2–11–25(a), or its predecessors with reference to the perfection of federal tax liens in personal property. Therefore, this court must concern itself with the Indiana rules of statutory construction in interpreting I.C. 36–2–11–25(a), and Section 2 of P.L. 338–1987 which repealed I.C. 36–2–11–21(a), in determining whether the State of Indiana has by statute designated one office within the State for the IRS to file a Notice of Federal Tax Lien as to personal property pursuant to 26 U.S.C. § 6323(f)(1)(A)(ii). Once this determination as to the intent of the Indiana legislature has been made, the court must then apply federal law to determine if the State of Indiana has met the requirements of 26 U.S.C. § 6323(f)(1). See, United States v. Union Central Life Insurance Co., 368 U.S. 291, 82 S.Ct. 349, 7 L.Ed.2d 294 (1961).

 If the language of the statute under consideration is plain and unambiguous there is no occasion for construction to ascertain the meaning of the statute. Reome v. Edwards, 226 Ind. 229, 79 N.E.2d 389, 391 (1948); Tucker v. Muesing, 219 Ind. 527, 39 N.E.2d 738 (1942); Allen v. Sullivan, 216 Ind. 394, 23 N.E.2d 471 (1939); Taelman v. Board of Finance of School City of South Bend, 212 Ind. 26, 6 N.E.2d 557 (1937); State v. Martin, 193 Ind. 120, 139 N.E. 282 (1923); Ward v. State, 188 Ind. 606, 125 N.E. 397 (1919); Piersol v. Hays, 113 Ind.App. 214, 47 N.E.2d 838 (1943); Bowen v. Review Board of Indiana Employment Sec. Division, 173 Ind.App. 166, 362 N.E.2d 1178, 1179 (1977); Romack v. State, 446 N.E.2d 1346, 1353 (Ind. App.1983).

 An unambiguous statute must be held to mean what it plainly expresses. Cheney v. State ex rel. Risk, 165 Ind. 121, 74 N.E. 892 (1905); In re Whisler, 56 Ind.App. 269, 105 N.E. 158 (1914); Pabst Brewing Co. v. Schuster, 55 Ind.App. 375, 103 N.E. 950 (1914); Meade Elec. Co. v. Hagberg, 129 Ind.App. 631, 641, 159 N.E.2d 408, 413 (1959). The plain and obvious meaning of a statute must not be enlarged or restricted by the court. Poyser v. Stangland, 230 Ind. 685, 689, 106 N.E.2d 390, 391 (1952); Williamson v. Illinois Cent. R. Co., 190 Ind. 239, 128 N.E. 758 (1920).

 Where the language of a statute is plain and unambiguous, the court must give such language a literal interpretation, and must carry the statute into effect without a construction limiting its extent or extending its operation. Burks v. Bolerjack, 427 N.E.2d 887, 889 (Ind.1981); Rogers v. Calumet Nat. Bank, 213 Ind. 576, 12 N.E.2d 261 (1938); Carnegie–Illinois Steel Corp. v. Review Bd. of Ind. Employment Sec. Division, 117 Ind.App. 379, 385–86, 72 N.E.2d 662, 665 (1947); McDaniels v. McDaniels, 116 Ind. App. 322, 62 N.E.2d 876, 879 (1945); Cain v. Staley Mfg. Co., 97 Ind.App. 235, 186 N.E. 265 (1933).

The Indiana Supreme Court noted:

The general rule is that nothing may be read into a statute which is not within the manifest intention of the legislature as gathered from the act itself, and that a statute should not be construed any more broadly or given any greater effect than its terms require. Where the language of the statute is clear in limiting its application to a particular class and leaves no room for doubt as to the intention of the legislature, there is no authority to transcend or add to the statute which may not be enlarged, stretched, or expanded, or extended to cognate or related cases not falling within

its provisions. 50 Am.Jur. Statutes, § 229, pp. 214, 215, 216.

*Poyser,* 230 Ind. at 689, 106 N.E.2d at 391.

It has been held that the legislature is presumed to act with respect to full knowledge and information as to the subject matter of the statute and the existing conditions and relevant facts relating thereto. *Board of Com'rs v. Sanders,* 218 Ind. 43, 54, 30 N.E.2d 713, 717 (1940); *Schrenker v. Clifford,* 270 Ind. 525, 527, 387 N.E.2d 59, 60 (1979); *Wayne Twp. v. Lutheran Hospital,* 160 Ind. App. 427, 432, 312 N.E.2d 120, 124 (1974); *Sekerez v. Youngstown Sheet & Tube Co.,* 166 Ind.App. 563, 568, 337 N.E.2d 521, 524 (1975).

■ In the absence of a statutory definition indicating a different legislative intention, the courts will assume that statutory words have their ordinary and popularly understood meanings. *Storen v. Jasper County Farm Bureau Co-op. Ass'n,* 103 Ind.App. 77, 2 N.E.2d 432 (1936); *Department of Revenue v. U.S. Steel Corp.,* 425 N.E.2d 659, 664 (Ind.App.1981).

■ The general rule is that statutory words are accorded their ordinary significance and commonly accepted meaning unless a different purpose is clearly manifested from the statute itself and that tax-levying statutes, which are construed against the state, must be applied in conjunction with the basic principle that all statutes should be read where possible to give effect to the intent of the legislature. *Park 100 Development Co. v. Indiana Dept. of State Revenue,* 429 N.E.2d 220, 222 (Ind.1981).

■ In construing a state statute, the duty of the Court is to ascertain and give effect to intent of legislature by giving meaning to the language used where the meaning is clear and unambiguous, and to construe a statute so as to arrive at the apparent intention of the legislature consistent with other statutes where the meaning is ambiguous or where one or more constructions are apparently possible. *Dague v. Piper Aircraft Corp.,* 275 Ind. 520, 524, 418 N.E.2d 207, 210 (Ind.1981).

This Court must be guided by the foregoing Rules of Statutory Construction as articulated the Indiana Courts in construing I.C. 36–2–11–25(a) and P.L. 338–1987, Section 2.

Attached to the Motion of the IRS is an Appendix that contains the following exhibits:

1. Exhibit "A": The certification of John J. Stief, Director, Office of Code Revision, Indiana Legislative Services Agency, together with portion of the file of the Indiana Legislature pertaining to P.L. 338–1987 ("legislative file").

2. Exhibit "B": Declaration of Senator Robert R. Johnson.

3. Exhibit "C": Declaration of Senator Joseph Cocharan.

4. Exhibit "D": Declaration of Representative John W. Donaldson.

5. Exhibit "E": Declaration of Geraldine Crockett, Clerk Northern District of Indiana.

6. Exhibit "F": Declaration of John O'Neal, Clerk of the Southern District of Indiana.

7. Exhibit "G": Declaration of D. Patrick Mullarkey, Section Chief of the Civil Trial Section, Northern Region, Dept. of Justice, Tax Division.

The IRS asserts that the Court may refer to these exhibits in interpreting I.C. 36–2–11–25(a), in particular those of Representative Johnson, the House author, Senator Johnson, the first Senate sponsor both of whom were on the Conference Committee, and Senator Cocharan, the second Senate conferee.

■ In construing a statute which is *ambiguous* or of doubtful meaning, resort to extrinsic facts may be had such as the circumstances surrounding its enactment, affairs contemporaneous with its passage, contemporaneous legislative history, the factual and legal situation existing at the time of its enactment, and the history of its passage to discover the legislative intent. Accordingly, resort may be had to the history of the statute as disclosed by the legislative journals. 26 I.L.E. *Statutes* § 124 (collecting cases). However, the Court cannot consider the motives of individual legislative members which influenced them to vote for or against an act. *Id. See, e.g., O'Laughlin v. Barton,* 582 N.E.2d 817 (Ind.1991), where the Court stated:

When legislation is susceptible to several widely different constructions, a court may look to the journals of the two legislative bodies to infer legislative intent. *County Dep't of Pub. Welfare v. Potthoff*, (1942), 220 Ind. 574, 44 N.E.2d 494. However, the motives of individual sponsors of legislation cannot be imputed to the legislature, absent statutory expression. *Tinder v. Clarke Auto Co.*, (1958), 238 Ind. 302, 149 N.E.2d 808.

Senate Enrolled Act No. 15 contains no mention of retroactive application, nor may such intent be inferred from its language. The statute is not susceptible to widely different constructions, and we find that the trial court erred in considering the affidavits.

*Id.*, 582 N.E.2d at 821.

The legal concepts of "property" [3], "real property",[4] and "personal property" [5] all have fairly well-defined, generally-accepted, and popularly-understood legal meanings. Indiana Code 36–2–11–25(a) is clear and unambiguous. It makes express reference to real property and real property only. Any other judicial construction that this statute also applies to personal property would be at complete odds with the express and plain language contained therein, and would require the Court to indulge in a tortuous exercise of sophistry or in semantic legerdemain.

■ Where the language of a statute is clear and unambiguous, the Court may not substitute language which it feels that the legislative body may have intended. *Ott v. Johnson*, 262 Ind. 548, 319 N.E.2d 622, 624 (1974). It is not within the province of the court to expand or contract the meaning of a statute by reading into it language which arguably will correct any supposed omissions

---

**3.** "Property" has been defined as follows:

The word is also commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate. It extends to every species of valuable right and interest, and includes real and personal property, easements, franchises, and incorporeal hereditaments, and includes every invasion of one's property rights by actionable wrong. *Labberton v. General Cas. Co. of America*, 53 Wash.2d 180, 332 P.2d 250, 252, 254.

Property embraces everything which is or may be the subject of ownership, whether a legal ownership, or whether beneficial, or a private ownership. *Davis v. Davis*, Tex.Civ. App., 495 S.W.2d 607, 611. Term includes not only ownership and possession but also the right of use and enjoyment for lawful purposes. *Hoffmann v. Kinealy*, Mo., 389 S.W.2d 745, 752.

Black's Law Dictionary, p. 1216 (6th ed. West Pub. Co.).

**4.** "Real Property" has been defined as follows:

Land, and generally whatever is erected or growing upon or affixed to land. Also rights issuing out of, annexed to, and exercisable within or about land. A general term for lands, tenements, and hereditaments; property which, on the death of the owner intestate, passes to his heir.

Real or immovable property consists of: Land; that which is affixed to land; that which is incidental or appurtenant to land; that which is immovable by law; except that for the purposes of sale, emblements, industrial growing crops and things attached to or forming part of the land, which are agreed to be severed before sale or under the contract of sale, shall be treated as goods and be governed by the regulating the sales of goods. Calif.Civil Code, § 658.

Black's Law Dictionary, p. 1218 (6th ed. West Pub. Co.).

**5.** "Personal Property" has been defined as follows:

*Personal Property.* In broad and general sense, everything that is the subject of ownership, not coming under denomination of real estate. A right or interest in things personal, or right or interest less than a freehold in realty, or any right or interest which one has in things movable.

Generally, all property other than real estate; as goods, chattels, money, notes, bonds, stocks and choses in action generally, including intangible property. *Bismarck Tribune Co. v. Omdahl*, N.D., 147 N.W.2d 903, 906.

\* \* \* \* \* \*

Personal property includes money, goods, chattels, things in action, and evidences of debt. Calif.Evid.Code.

Personal property is divisible into (1) corporeal personal property, which includes movable and tangible things, such as animals, furniture, merchandise, etc.; and (2) incorporeal personal property, which consists of such rights as personal annuities, stocks, shares, patents, and copyrights.

Black's Law Dictionary, p. 1217 (6th ed. West Pub. Co.).

986

or defects. *Smiley v. State,* 416 N.E.2d 855, 856 (Ind.App.2d Dist.1991).

The Court cannot judicially delete or ignore the modifier "real" before the word "property", as expressly set out in the statute, or judicially insert the word "personal property" into the statute when there is absolutely no basis to do so.

All that matters for purposes of fixing the location for filing and searching for liens is that the place chosen be the "simple, obvious, and natural place to file and look for liens." *Dimmitt & Owens, Inc. v. United States,* 787 F.2d 1186, 1190 (7th Cir.1986). Indiana Code 36–2–11–21(a) did not provide such an office with the State of Indiana as to a Notice of a Federal Tax Lien as to personalty.

■ In construing a statute, it is just as important to recognize what the statute does *not* say as it is to recognize what it does say. *Irmscher v. McCue,* 504 N.E.2d 1034, 1037 (Ind.App.1987); *Bonge v. Risinger,* 511 N.E.2d 1082, 1084 (Ind.App.1987), *reh. denied, transfer denied; Adult Group Properties, Ltd. v. Imler,* 505 N.E.2d 459, 463 (Ind. App.1987) *reh. denied, transfer denied; Charles W. Smith and Sons Excavating, Inc. v. Lichtefeld–Massaro, Inc.,* 477 N.E.2d 308, 310 (Ind.App.1985); *Boone County State Bank v. Andrews,* 446 N.E.2d 618, 620 (Ind. App.1983). Indiana Code 36–2–11–25(a) makes no reference to personal property whatsoever. This is in stark contrast to its predecessors, I.C. 36–2–11–21(a), and Acts 1925, Chapter 50, Section 1, which expressly used the generic and all-encompassing term "property" which by all generally-accepted definitions includes both real property and personal property, both tangible and intangible.

■ Because the Court concludes that the meaning of I.C. 36–2–11–25(a) is clear and unambiguous on its face it cannot resort to the many extrinsic aids as set out in the Appendix to the IRS' Brief in construing that statute. The Court further concludes that I.C. 36–2–11–25(a) only applies to real property and does not apply to personal property. Thus, any Notice of Federal Tax Lien as to *personal* property at the time I.C. 36–2–11–25(a) was in effect had to be filed with the

Clerk of the District Court pursuant to 26 U.S.C. § 6323(f)(1)(B), because the State of Indiana at that time had not designated one office within the State which met the requirements of 26 U.S.C. § 6323(f)(1)(A)(ii) as to the filing of a Notice of Federal Tax Lien versus personalty.

■ The IRS also argues in the alternative that if this Court should find that I.C. 36–2–11–25(a) does not apply to personalty, P.L. 338–1987, Section 2 only partially repealed I.C. 36–2–11–21(a). As noted previously, Section 2 of P.L. 338–1987 expressly states: "I.C. 36–2–11–21 IS REPEALED." In support of that position, the IRS cites *Indianapolis Union Railway Co. v. Waddington,* 169 Ind. 448, 82 N.E. 1030 (1907), where the Indiana Supreme Court held that a "repealing clause is subject to construction the same as any other provision of law.", *citing, Arnett v. State ex rel. Donohue,* 168 Ind. 180, 80 N.E. 153 (1907). Again, the Court concludes that P.L. 338–1987, Section 2 is clear and unambiguous, and there is no indication whatsoever that the Indiana legislature intended only a partial repeal of I.C. 36–2–11–21(a) thereby. The repealer is short, clear, and concise. There are no other repealer provisions in Section 2 of P.L. 338–1987, or in any other related acts which, when construed together, would render Section 2 ambiguous. Accordingly, the Court concludes that P.L. 338–1987, Section 2 constituted a general repeal of I.C. 36–2–11–21.

■ The Court would note that it is also a Rule of Statutory Construction in Indiana that when a statute contains certain language that is later deleted, statutory construction presumes that the legislature was cognizant of the presence and meaning of the prior language, and intended by its deletion to change the law. *Frey v. Review Bd. of Indiana Employment, Sec.—Div.,* 446 N.E.2d 1341, 1344 (Ind.App.1983); *Landers v. Pickering,* 427 N.E.2d 716, 718 (Ind.App. 1981); *Tarver v. Dix,* 421 N.E.2d 693, 698 (Ind.App.1981).

Although there is a paucity of case law in this area, there is case law which lends support for this Court's conclusions. In the case of *United States v. Flores,* 535 F.2d 135 (1st

Cir.1975), the IRS filed its Notice of tax lien with the clerk of the Federal District Court, and asserted a perfected tax lien as to certain personal property. The *Flores* case was decided under § 6323(f) of the Internal Revenue Code of 1954, which was a predecessor to § 6323(f)(1)(A)(ii) of the present Internal Revenue Code and contained like provisions. The Puerto Rico statute provided that in accordance with § 6323 Notices of Federal Tax Liens shall be presented for registration in the section of the registry of property of the District where the "real properties" were located. The District Court held that the Puerto Rico statute was ambiguous and that in determining whether the statute applied to both realty and personalty the legislative intent of Puerto Rico should govern. Proceeding from that premise the District Court held that this intent was "to designate the office of the registry of property as the filing place of federal tax liens so as to 'give greater publicity to the federal tax liens'". The First Circuit reversed; and stated as follows:

Careful analysis of Chapter 91 of Title 30 reveals that @1922 is the only section designating a place for filing notices of liens. It designates with precision the place for filing notices of liens on real property. Neither that section nor @1921 designates specifically the place for filing notices as to personal property. However, @6323(f) clearly requires such a specific designation. We are guided by the United States Supreme Court's decision in *United States v. Union Central Life Insurance Co.*, 368 U.S. 291, 82 S.Ct. 349, 7 L.Ed.2d 294 (1961). In that case the IRS had filed a notice of tax lien in the United States District Court for the District of Michigan in which certain real property as located. The IRS had refused to file the notice with the local register of deeds because Michigan law required a description of the land upon which the lien was claimed, and the form of notice used by the IRS did not include such a description. Since Michigan required such a description the IRS concluded that Michigan had not "authorized" filing of the notice within the meaning of @3672 of the Internal Revenue Code of 1939, the predecessor to @6323, and that

the notices should, therefore, properly be filed in the United States District Court. The Supreme Court agreed with the IRS holding that the State of Michigan could not place obstacles to the enforcement of federal tax liens not clearly permitted by Congress, and in attempting to do so, had not "authorized" a place for filing within the meaning of @3672. In so holding, the court stated

* * * the subject of federal taxes, including 'remedies for their collection, has always been conceded to be independent of the legislative action of the States.' *United States v. Snyder*, 149 U.S. 210, 214, 37 L.Ed. 705, 13 S.Ct. 846 [ (1893) ]. While @3672(a)(1) unquestionably requires notice of a federal lien to be filed in a state office when the State authoritatively designates an office for that purpose, the section does not purport to permit the State to prescribe the form or the contents of that notice.

*Id.* at 293–94, 82 S.Ct. at 351 (emphasis added). *See also, United States v. Estate of Donnelly*, 397 U.S. 286, 25 L.Ed.2d 312, 90 S.Ct. 1033 (1970).

Puerto Rico's designation of an alternative filing place with respect to personal property is anything but authoritative. While @1921 read alone could be said to encompass all federal tax liens on both real and personal property, @1922 refers only to real property. Puerto Rico has throughout Title 30 established specific provisions for recording interest in real property. 30 L.P.R.A. @1748 provides that the Commonwealth of Puerto Rico is one sole property registry district; 30 L.P.R.A. @1749 divides this district into sections and further provides that "[in] each section of the Property Registry of Puerto Rico shall be recorded the titles to the estates located within its respective territorial jurisdiction." 30 L.P.R.A. @377 provides that with respect to real property, a special section in the Registry of Property is opened for each estate, and all subsequent records affecting that estate are to be entered in that section. In contrast, 30 L.P.R.A. @1806 provides that all personal property mortgages must be recorded in

both the registry of property of the district in which the property owner resides, and the registry of property of the district in which the personal property is located. Given the differing provisions with respect to the recording of real property and personal property interests, we hold that @1922, which is consistent with the provisions of @@1749 and 377, designates a place for filing notices of liens with respect to real property only. Section 1921 is silent as to the place for filing, and we are unable to extrapolate from @1922 to determine the place for filing as to personal property. It is significant that the editors of the CCH Standard Federal Tax Reporter have also adopted this interpretation.

\* \* \* \* \* \*

In summary, we hold that the notices of liens for the withholding and FICA taxes were properly filed in the Office of the Clerk of the United States District Court, that such filing was timely, and consequently that the Government's interest in the subject personal property is superior to the interests of Flores and Santana. If the legislature of Puerto Rico in its wisdom desires to designate a place for filing notices of liens as to personal property for taxes assessed by the United States Government, it is free to so legislate. (footnote omitted).

*Id.* 535 F.2d at 138–39. *See also, In re Air Florida Systems, Inc.,* 50 B.R. 653, 657–58 (Bankr.S.D.Fla.1985). (Florida statutes designated two different places to file a lien versus an aircraft, thus violating the "one office" rule of 26 U.S.C. § 6323(f)(1)(B). Held: IRS had to file Notice of lien with Clerk of District Court); *Harrison v. Harold Cox Concrete Construction Co., Inc.,* 440 F.Supp. 859 (W.D.Ky.) (Term "property" is used in Kentucky statute for purpose of 26 U.S.C. § 6323(f)(1) applied to real property and personal property).

In *In re Aiken,* 133 B.R. 258 (D.Me.1991), the District Court held that a Maine statute providing that notice of federal liens may be filed in the registry of deeds for the county in which the "property" subject to such lien is situated, applied to both personal property and real property. The Bankruptcy Court had held that the Maine statute only applied to real property, and that the IRS did not

perfect its lien as to personal property by filing its Notice of lien with the Registry of Deeds. The District Court reversed, and held that the plain language of the statute indicated that "property" means real and personal property. The *Aiken* Court distinguished the *Flores* case discussed above because in *Flores,* the state legislature had limited the scope of the statute to "real property."

 Like the state statute in *Flores,* I.C. 36–2–11–25(a), is limited to only real estate. On the other hand, like the state statutes in *Aiken,* and *Harrison,* the repealed statute, I.C. 36–2–11–21(a) referred to "Property", which included both real property and personal property. This Court's conclusions as to the scope of I.C. 36–2–11–25(a), and its predecessor, I.C. 36–2–11–21(a), as to personal property is thus consistent with the foregoing cases. As in *Flores,* the IRS should have filed its Notice of Federal Tax Lien with the Clerk of the District Court as to personal property pursuant to I.C. 36–2–11–25(a), and as in *Aiken,* under the predecessor statute, I.C. 36–2–11–21(a) it was proper for the IRS to file its Notice of Federal Tax Lien as to personal property with the County Recorder.

As a final basis for its Motion, the IRS raises two other substantive issues relating to the Court's judgment as to the priority of the security interest of First Federal over the tax lien of the IRS that do not focus on the place of filing.

The IRS asserts: (1) that the property (i.e. the interplead funds) is the proceeds of the Trustees' bank account, rather than "unpaid rent", and therefore not subject to First Federal's lien, IRS' Brief, pp. 23–26; and, (2), that if First Federal has any lien at all, it was not perfected against a subsequent judicial lien, and therefore would neither beat the tax lien or escape avoidance under § 544 of the Bankruptcy Code. IRS' Brief, pp. 26–29.

 The Court finds no error in its conclusion of law as set out in its Judgment. The IRS now admits that the property in issue is personalty rather than realty, but asserts that the bank account of the Trustee

upon which it levied no longer had the characteristics of paid rentals, and thus was not covered by First Federal's Security Agreement (Assignment of Rents). The Court disagrees. The nature of the property subject to First Federal's Assignment of Rent was determined when the rents actually came due by Walgreens to the Debtor. First Federal's lien attached at that time. The Assignment of Rents covered "all rents, issues, and profits due or to become due." (*See*, Exh. "E" to Stipulation filed February 14, 1993, and Judgment, P. 10). The fact that these rentals were subsequently deposited in the Trustee's bank account after the Debtor's Chapter 13 petition was filed did not cause First Federal to lose its lien therein. *See*, 11 U.S.C. § 552(b).[6] As observed in the Judgment, the Assignment of Rents by the Debtor to First Federal is not subject to the Indiana UCC. I.C. 26–1–9–104(j). Judgment, p. 51. However, as the legislative history to § 552(b) states, "The term 'proceeds' is not limited to the technical definition of that term in the UCC, but covers any property into which property subject to a security interest is converted." H.R.Rep. No. 595, 95th Cong., 1st Sess. 377 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5963, 6333. There is no question that the post-chapter 13 rentals that accrued to the Debtor from Walgreens can be directly traced to the Trustee's bank account, and there is no evidence that they were so commingled with other funds of the Trustee that they thereby lost their identity as rentals subject to first Federal's security interest.

The IRS' second contention is that to the extent First Federal has a security interest in the accrued rentals it was not perfected under Indiana law against a subsequent judicial lien arising out of an unsecured obligation as required by 26 U.S.C. § 6323(h)(1)(A). This assertion must also be rejected. It should be noted that the Court's decision was based on the relative priorities of First Federal and the IRS *inter se*, as two nondebtors, and that the Debtor's avoiding powers under § 544 were never implicated in the Court's decision, as the Debtor never sought any such relief. *See*, Judgment, p. 14. The Court concludes that its conclusion of law that the Assignment of Rentals granted to First Federal a valid security interest in the accrued rentals, under Indiana law that was superior to a subsequent judicial lien, and thus meets the requirements of 26 U.S.C. § 6323(h)(1)(A), and was thus not an erroneous conclusion of law. *See*, Judgment, pp. 67–69.

It is therefore,

**ORDERED, ADJUDGED, AND DE-CREED,** that the Motion by the IRS to Alter Judgment or for New Trial filed on October 27, 1992, should be and is hereby DENIED.

---

6. Section 552(b) states:

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.