In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3939

BLOOMFIELD STATE BANK,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:10-cv-00131-LJM-WGH—**Larry J. McKinney**, *Judge*.

ARGUED APRIL 13, 2011—DECIDED MAY 11, 2011

Before POSNER, WOOD, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*. The question presented is whether a mortgage that assigns future rental income to the mortgagee creates a security interest that takes priority over a federal tax lien. The answer depends on whether such an assignment constitutes an "interest in property acquired by contract for the purpose of securing payment or performance of an obligation" and whether when the interest is acquired *"the property is in*

*existence* and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation." 26 U.S.C. § 6323(h)(1). Only the application of the clause that we have italicized is at issue.

In 2004 the plaintiff bank made a mortgage loan in Indiana secured by the borrower's real estate plus (so far as relates to this case) "all rents . . . derived or owned by the Mortgagor directly or indirectly from the Real Estate or the Improvements" on it. Three years later the mortgagor defaulted. The Internal Revenue Service filed a tax lien against the real estate. At the bank's request a state court appointed a receiver to administer the debtor's real estate, and he rented some of the property the following year, collecting $82,675 in rents for the bank's account. The IRS conceded that on rentals received before the tax lien was filed (had there been any such rentals—there weren't), the bank's lien would take priority over its own lien. But it claimed that the tax lien took priority over the bank's lien on rentals received after the tax lien was filed, thus including the $82,675. The bank sued in federal district court for declaratory relief. The court granted summary judgment in favor of the IRS and the bank has appealed.

The rentals provision in the mortgage created a perfected security interest in rentals received at any time. Ind. Code § 32-21-4-2(c); *Chase Commercial Corp. v. Brandt ex rel. Creditors of AnaMag, Inc.*, 1999 WL 965843, at *1-2 (N.D. Ill. Oct. 14, 1999); see also Uniform Assignment of Rents Act, § 5 and comment 2 (2005) ("roughly one-third of the

states[, including Indiana,] have enacted statutes making clear that an assignment of rents is 'perfected,' without regard to whether the mortgagee has taken any steps to 'activate' or 'enforce' that assignment"). But the provision of the federal tax code that we quoted gives such an interest priority over a federal tax lien only if the property secured by the mortgage was "in existence" when the federal tax lien was filed. The government argues and the district court ruled that the relevant property was the rentals, which did not exist—the receiver had not yet rented the debtor's real estate—when the federal tax lien attached. The bank argues that the relevant property was the real estate.

Oddly, there is no reported appellate decision on point. (At the district court or bankruptcy court level we find divergent rulings. Compare *Bank One, West Virginia, N.A. v. United States*, 1996 WL 303276, at *3-4 (S.D. W. Va. Mar. 29, 1996), with *First National Bank of Ohio v. United States*, 1994 WL 481357, at *1 (N.D. Ohio Mar. 28, 1994), and *In re Whyte*, 164 B.R. 976, 988-89 (Bankr. N.D. Ind. 1993).) The district judge based his decision primarily on the analogy of rents to accounts receivable; accounts receivable that come into being after a federal tax lien attaches to the assets that generate them have been held not to trump the tax lien. *J.D. Court, Inc. v. United States*, 712 F.2d 258, 261-64 (7th Cir. 1983); *Sgro v. United States*, 609 F.2d 1259, 1263-65 (7th Cir. 1979); *Texas Oil & Gas Corp. v. United States*, 466 F.2d 1040, 1049-52 (5th Cir. 1972).

The "existence" condition for a creditor's lien to trump a federal tax lien is known in tax-speak (and to a lesser

extent in bankruptcy when priority between two security interests is disputed) as "choateness." The word "choate," used as it is in law to mean "in existence" (its usage outside of law is essentially nonexistent), is a barbarism, albeit a venerable one. Its earliest known appearance is in 2 R.S. Donnison Roper & Henry Hopley White, *A Treatise on the Law of Legacies* 358 (3d ed. 1829); it first appeared in a U.S. Supreme Court opinion in *United States v. City of New Britain*, 347 U.S. 81, 84 (1954). "*Choate*, a back-formation from *inchoate*, is a misbegotten word, for the prefix in *inchoate* is intensive and not negative . . . . The word derives from the Latin verb *inchoare* 'to hitch with; to begin.' Yet, because it was misunderstood as being a negative (meaning 'incomplete'), someone invented a positive form for it, namely *choate* (meaning 'complete')." Bryan Garner, *A Dictionary of Modern Legal Usage* 152 (2d ed. 1995); see also Ben Zimmer, "On Language—Choate," *N.Y. Times*, Jan. 3, 2010, p. MM16. The "in" in "inchoate" is no more a negative than the "in" in "incipient" or "into" or "ingress" or "inflammable." Imagine thinking that because "inflammable" means "catches fire," "flammable" must mean fireproof. "Inchoate" means vague, unformed, or undeveloped. If there were a word "choate," it would mean approximately the same thing.

Garner adds that "although the word is etymologically misbegotten, it is now fairly well ensconced in the legal vocabulary . . . [and] is used even by those who deprecate its origins." Garner, *supra*, at 152-53. Not used by us! For the law's use of "choate" is not only a sign of ignorance but also a source of confusion. The require-

ment of being in existence does not apply to the lien; no one doubts that the *lien* exists—if it didn't the taxpayer couldn't get to first base. Yet beginning with *City of New Britain* the cases invariably state the question as whether the *lien* is "choate." What must exist is the *property* that the lien is on. The statute could not be clearer.

The government misreads not only the statute but also the Supreme Court's statement in *United States ex rel. IRS v. McDermott*, 507 U.S. 447, 449-50 (1993), that "our cases deem a competing state lien to be in existence for 'first in time' purposes only when it has been 'perfected' in the sense that 'the identity of the lienor, the property subject to the lien, *and the amount of the lien* are established'" (emphasis added). The government thinks this means that the amount of money that enforcement of a lien will yield must be known. We do not read the passage so. The mortgage agreement in this case established a lien on the real estate and all the rents it might yield, up to the amount of the loan, which of course is stated in the agreement. The Justices in *McDermott* were thinking of cases like *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 89-91 (1963), where, because the lien was on fees for attorneys' services not yet provided, the amount of the lien was unanchored. It was similar to a lien on accounts receivable, the amount of which cannot be known until a good is sold and generates a receivable.

The "property" that must be in existence for a lender's lien to take priority over a federal tax lien is the property that, by virtue of a perfected security interest in it, is a

source of value for repaying a loan in the event of a default; it is not the money the lender realizes by enforcing his security interest. This proposition is clearly stated in *PPG Industries, Inc. v. Hartford Fire Ins. Co.*, 531 F.2d 58, 61-62 (2d Cir. 1976); *Plymouth Savings Bank v. IRS*, 187 F.3d 203, 207-09 (1st Cir. 1999); *MLQ Investors, L.P. v. Pacific Quadracasting, Inc.*, 146 F.3d 746, 749 and n. 1 (9th Cir. 1998), and *Jefferson Bank & Trust v. United States*, 894 F.2d 1241, 1244-45 (10th Cir. 1990).

No one would dispute the proposition in a case in which a mortgaged property was sold in a foreclosure sale rather than rented. Suppose that after the tax lien in this case attached in 2007, the receiver had sold the mortgagor's property for $1 million. Would the IRS argue that its tax lien was prior to the bank's interest in the $1 million? Of course not; the mortgage had been issued years earlier, secured by real estate then existing. Whether the proceeds from the enforcement of a lender's lien take the form of sale income or rental income is a detail of no significance. To say that a parcel of land is "sold" rather than "rented" just means that the owner sells the use of the land forever rather than for a limited period. Sale income and rental income are just two forms of proceeds from land (or from improvements on it).

That would have been obvious in this case had not the mortgage contained a provision stating that rental income generated by the borrower's real estate was additional collateral securing the mortgage. That makes it seem as if the rental income is a distinct form of

property rather than merely proceeds of owning a rented property. Actually the rental-income provision in the mortgage is a superfluity. The receiver appointed to conserve the mortgagor's assets for the benefit of creditors was empowered without regard to that provision to manage the real estate in whatever way would generate the maximum amount of money to satisfy the debt, secured by the mortgage, that was owed to the bank. The rental-income provision would be in play if the mortgagor, when it defaulted, had deposited rental income from its property in a bank account; the mortgagee could have seized the income in the account on the authority of its lien on rental income. That is not this case.

The only effect of the rule adopted by the district court would be to deflect the receiver from renting rather than selling real estate secured by the mortgage, in order to avoid the tax lien. Who would benefit from such a curtailment of a receiver's authority to maximize the value of receivership assets? Not the bank, not the Internal Revenue Service, and not mortgagors.

The concern behind the "existence" requirement in the tax code (as in the judge-made doctrine denying priority to tax liens for liens deemed "inchoate," before the Federal Tax Lien Act was passed in 1966) appears to have been concern about allowing liens in certain types of after-acquired property to trump a federal tax lien. See *United States ex rel. IRS v. McDermott*, *supra*, 507 U.S. at 450-53; *Glass City Bank v. United States*, 326 U.S. 265, 268-69 (1945); *UNI Imports, Inc. v. Aparacor, Inc.*, 978 F.2d 984, 987

(7th Cir. 1992); *In re Avis*, 178 F.3d 718, 722 (4th Cir. 1999); S. Rep. No. 89-1708, 1966 U.S.C.C.A.N. 3722, 3723-24; David A. Schmudde, *Federal Tax Liens* § 7.02(i), pp. 151-53 (4th ed. 2001); Peter F. Coogan, "The Effect of the Federal Tax Lien Act of 1966 Upon Security Interests Created Under the Uniform Commercial Code," 81 *Harv. L. Rev.* 1369, 1375-77, 1381 (1968). Suppose the mortgage in this case had created a lien not only in the mortgagor's existing real estate but also in any property of any kind that the mortgagor might ever acquire. Then the IRS would never be able to enforce a tax lien against the mortgagor were it not for the requirement that property subject to a lien be existing property of the borrower when the lien attaches. The real estate that generated the rental income at issue in this case existed when the mortgage was issued and thus before the tax lien attached; the rental income was proceeds of that property, which pre-existed the tax lien.

The government relies primarily, as did the district court, on cases which hold that a security interest in accounts receivable does not come into existence and thus trump a subsequently filed federal tax lien until the accounts receivable come into existence, that is, until a buyer of goods or services from the grantor of the security interest becomes indebted to the grantor. Suppose company *A* assigns its accounts receivable to bank *B* at time *t*, before *A* has sold anything. At time *t* + 1 the IRS obtains a lien on *A*'s assets. At time *t* + 2 *A* sells goods to *C* on credit. *C* now has a debt to *A*, and, by virtue of *B*'s security interest, *B* has a lien on the money *C* owes *A*. *C*'s debt to *A* is an account receivable of *A*, assigned

to *B*. But *B*'s lien was on accounts receivable, and *A* had no accounts receivable, and *B* therefore no lien, when the federal tax lien attached. That would be just like the *Pioneer* case.

This case would be similar had the plaintiff bank not had a mortgage on its borrower's property, but just a lien in rentals. Then until rentals were received, the property on which the bank had a lien would not have come into existence. But because the bank had a lien on the real estate, the rentals were proceeds. By virtue of the rental-income provision in the mortgage, the bank had a separate lien on the rents, but that is not the lien on which it is relying to trump the tax lien. The lien on which it is relying is the lien on the real estate. If an asset that secures a loan is sold and a receivable generated, the receivable becomes the security, substituting for the original asset. The sort of receivable to which the statute denies priority over a federal tax lien is one that does not match an existing asset; a month's rent is a receivable that matches the value of the real property for that month.

The judgment is reversed and the case remanded with directions to enter judgment for the bank.

REVERSED AND REMANDED.