In re REITTER CORPORATION d/b/a Hospital San Gerardo, Debtor(s).

Banco Popular De Puerto Rico, Appellant(s),

v.

United States of America, Appellee(s).

Civil Nos. CIV. 11–1132(DRD), 11–1529(DRD).
Bankruptcy No. 10–07152 ESL.

United States District Court, D. Puerto Rico.

March 31, 2012.

---

**59.** *TRW Inc. v. Andrews,* 534 U.S. at 31, 122 S.Ct. 441.

Monique J. Diaz–Mayoral, Rafael Perez–Bachs, Jose R. Gonzalez–Irizarry, McConnell Valdes, San Juan, PR, for Appellant.

Andrew C. Strelka, United States Department of Justice, Washington, DC, for Appellee.

Alexis Fuentes–Hernandez, Fuentes Law Offices, San Juan, PR, for Debtor.

**OPINION AND ORDER**

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court are two appeals which have been consolidated, as both are intrinsically intertwined. In both cases, appellant Banco Popular de Puerto Rico ("BPPR") challenges the decision of the bankruptcy court finding that the United States of America through its agency the Internal Revenue Service (the "United States" or the "IRS"), "is the senior lien holder over Debtor's [Reitter Corporation d/b/a Hospital San Gerardo (hereinafter 'Reitter')] accounts receivable which were generated on or after March 1, 2010." *See Opinion and Order* of May 13, 2011, Bankruptcy No. 10–07152(ESL),

Docket No. 194. For the reasons set forth below, both appeals, that is, Civil No. 11–1132(DRD) and Civil No. 11–1529(DRD) are dismissed *albeit* on different grounds.

## Jurisdiction

This Court has jurisdiction to entertain the appeal referred from the bankruptcy court under 28 U.S.C. § 158(a)(1).

## Standard of Review

On bankruptcy appeals, the district court reviews rulings of law *de novo* and findings of fact for clear error. *Prebor v. Collins (In re I Don't Trust)* 143 F.3d 1, 3 (1st Cir.1998); *Jeffrey v. Desmond,* 70 F.3d 183, 185 (1st Cir.1995). "Under an abuse of discretion standard, a reviewing court cannot reverse unless it has a 'definite and firm conviction that the court below committed a clear error of judgment' in the conclusion it reached upon a weighing of the relevant factors." *Taylor v. Hosseinpour–Esfahani,* 198 B.R. 574, 577 (9th Cir. BAP 1996), citing *Marchand v. Mercy Medical Ctr.,* 22 F.3d 933, 936 (9th Cir.1994). "Evidentiary rulings by the bankruptcy court are subject to the 'abuse of discretion' standard." *Williamson v. Busconi,* 87 F.3d 602, 603, n. 4 (1st Cir.1996), citing *United States v. Cotto–Aponte,* 30 F.3d 4, 6 (1st Cir.1994).

"The standard of review on this appeal requires that we respect, unless 'clearly erroneous,' all findings of fact by the bankruptcy court, which includes any finding of actual reliance and any raw fact findings pertinent to the issue of justifiable reliance. *Brandt v. Repco Printers & Lithographics, Inc.,* 132 F.3d 104, 107–08 (1st Cir.1997)." *In re Spadoni,* 316 F.3d 56, 58 (1st Cir.2003). "A court reviewing a decision of the bankruptcy court may not set aside findings of fact unless they are clearly erroneous, giving 'due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses.'

(Citations omitted)." *Palmacci v. Umpierrez,* 121 F.3d 781, 785 (1st Cir.1997).

"A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is 'left with the definite and firm conviction that a mistake has been committed.'" *Palmacci,* 121 F.3d at 785, citing *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). "Deference to the bankruptcy court's factual findings is particularly appropriate on the intent issue '[b]ecause a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor.'" *Id.* citing *In re Burgess,* 955 F.2d 134, 137 (1st Cir.1992). "Particular deference is also due to the trial court's findings that depend on the credibility of other witnesses and on the weight to be accorded to such testimony." *Id.* citing Fed.R.Bank.R. 8013; *Keller v. United States,* 38 F.3d 16, 25 (1st Cir. 1994).

## Issues

The main issues before the Court are: (a) whether the bankruptcy court erred in finding that the IRS is the senior lien holder of Reitter's accounts receivable that were generated by services rendered on or after March 1, 2010, pursuant to 26 U.S.C. § 6323(c)(3); (b) whether the parties were properly notified under the applicable bankruptcy rules; (c) whether the bankruptcy court erred in taking judicial notice of the documents that are part of the record; and (d) whether the bankruptcy court erred by failing to inform counsel the procedure to be followed when challenging a lien priority and/or the use of cash collateral. The Court is cognizant that the parties have raised a total of 13 statements to be addressed on appeal. The Court, however, has consolidated the statements that will dispose of the instant appeal.

## Factual and Procedural Background

Reitter Corporation d/b/a Hospital San Gerardo filed for voluntary relief under Chapter 11 of the Bankruptcy Code, on August 6, 2010. On September 1, 2010, Reitter and BPPR filed their first *Urgent Joint Motion and Stipulation for Interim Use of Cash Collateral, Adequate Protection and for other Relief,* Bankruptcy No. 10–07152, Docket No. 28.[1] The parties gave notice to all parties interest included in the Master Address List which is part of Bankruptcy No. 10–07152(ESL), Docket No. 1.[2] On September 8, 2010, the bankruptcy court approved the request for use of cash collateral as being unopposed. *See* Bankruptcy No. 10–07152(ESL), Docket No. 33.

Thereafter, Reitter and BPPR filed several joint stipulations for the use of cash collateral, to wit, on October 26, 2010, Bankruptcy No. 10–07152(ESL), Docket No. 44; on November 4, 2010, Bankruptcy No. 10–07152(ESL), Docket No. 55, and the corresponding orders approving the same by the bankruptcy court, as being unopposed, *see* Bankruptcy No. 10–07152(ESL), Docket entries No. 56, 58.

On December 6, 2010, the United States filed a *Motion to Prohibit Use of Cash Collateral,* Bankruptcy No. 10–07152(ESL), Docket No. 204. The core of the issues on appeal stems from the United States' opposition to the use of cash collateral, and BPPR's reply thereto. In a nutshell, the United States allege that, pursuant to 26 U.S.C. § 6323(c)(3), the IRS is the senior lien holder of Reitter's accounts receivable which were generated 45 days from January 14, 2010, date when the IRS recorded its first Notice of Federal Tax Lien with the United States District Court for the District of Puerto Rico. BPPR argues that it has a secured claim duly guaranteed by Reitter's property under applicable Puerto Rico law. A hearing was held on December 28, 2010 by the bankruptcy court on this matter. After hearing the parties' arguments, the bankruptcy court issued its ruling. *See* Bankruptcy No. 10–07152(ESL), Docket No. 97. The bankruptcy court further ordered the parties to file simultaneous briefs on or before January 14, 2011, and 14 days thereafter to file the replies. *See* Bankruptcy No. 10–07152(ESL), Docket No. 97. On May 13, 2011, the bankruptcy court entered an *Opinion and Order* on this

---

1. BPPR filed its Proof of Claim on December 13, 2010, *see* Claim No. 33–1. It appears from BPPR's Proof of Claim that Reitter and BPPR executed a Loan and Security Agreement to extend certain credit facilities, on January 25, 2006. "To secure payment and performance of all its obligations under the Financing Agreements, Debtor [Reitter] granted BPPR a first priority perfected security interest over all or nearly all of its assets." *See* Proof of Claim No. 33–1, p. 2. BPPR's claim is secured by certain personal and real property identified in Exhibit B [of the Proof of Claim No. 33–1]. According to Claim No. 33–1, BPPR has a secured claim under the Loan and Security Agreement in the amount of $10,200,000.00. *See* Proof of Claim No. 33–1, Exhibit A.

2. To avoid being repetitive, all the motions filed by Reitter and BPPR regarding the use of cash collateral were served to all parties in interest included in the Master Address List. The Court notes that the IRS is included in the Master Address List under "Internal Revenue Service Centralized Insolvency Operations, P.O. Box 21126, Philadelphia, PA 19114–0326," "Internal Revenue Service P.O. Box 21126, Philadelphia, PA 19114–0326." The Court further notes that notice was not given to the United States Attorney General, the United States Department of Justice nor to the Internal Revenue Service, Daisy Montañez, Bankruptcy Specialist, City View Plaza II, 48 Carr 165 Suite # 2000, Guaynabo, PR 00968–8000 [*see* IRS' Proof of Claim No. 4, filed on September 8, 2010], as these parties were not included in the Master Address List.

matter, which is now pending before this Court. *See* Bankruptcy No. 10–07152(ESL), Docket No. 194.[3]

The record shows that, on December 29, 2010, BPPR took an appeal from the bankruptcy court's ruling entered on December 28, 2010. *See* Bankruptcy No. 10–07152(ESL), Docket No. 98. BPPR elected to hear this appeal at the district court, and it was docketed under Civil No. 11–1132(DRD). The record further shows that, on May 16, 2011, BPPR filed a second appeal from the bankruptcy court *Opinion and Order* of May 13, 2011. *See* Bankruptcy No. 10–07152(ESL), Docket No. 197. BPPR again requested that the second appeal be heard by the district court, and it was docketed under Civil No. 11–1529. At that time, the Court requested that Civil No. 11–1529 be assigned to the undersigned, as both appeals are directly related and intertwined with Civil No. 11–1132(DRD). *See* Civil No. 11–1132(DRD), Docket No. 14. Both appeals were consolidated, as per *Order* of June 29, 2011. *See* Civil No. 11–1132(DRD), Docket No. 16.

The record shows that both parties have filed their briefs. The Court deems this matter is submitted without a hearing.[4]

### Applicable Law and Discussion

**A. IRS: a senior lien holder under 26 U.S.C. § 6323(c).**

The core of this appeal is whether the IRS is the senior lien holder over Reitter's accounts receivables generated on or after March 1, 2010. To answer this query the Court refers to the provisions of the Federal Tax Lien Act ("FTLA"), 26 U.S.C. §§ 6321, 6323.

26 U.S.C. § 6323(c) provides in its relevant part:

(c) Protection for certain commercial transactions financing agreements, etc.

. . .

(2) **Commercial transactions financing agreement.**

(A) Definition. The term "**commercial transaction agreement" means an agreement (entered into by a person in the course of his trade or business)—(i) to make loans to the taxpayer to be secured by commercial financing security** acquired by the taxpayer in the ordinary course of his trade or business, **or (ii) to purchase commercial financing security (other than inventory) acquired by the taxpayer in the ordinary course of his trade or business; but such an agreement shall be treated as coming within the term only to the extent that such loan or purchase is made before the 46th day after the date of tax lien filing or (if earlier) before the lender or purchaser had actual notice or knowledge of such tax lien filing.**

(B) Limitation on qualified property. The term "**qualified property," when used with respect to a commercial transactions financing agreement, includes only commercial financing security acquired by the taxpayer before the 46th day after the date of tax lien filing.**

(c) Commercial financing security defined. The term "**commercial financing security**" means (i) paper of a kind ordinarily arising in commercial transactions, (ii) **accounts receivable,** (iii) mort-

---

**3.** The *Opinion and Order* of May 13, 2011 is published at *In re Reitter Corp.,* 449 B.R. 641 (Bankr.D.Puerto Rico 2011).

**4.** The Court finds that the bankruptcy court's *Opinion and Order* of May 13, 2011 is very thorough, hence, a hearing on this matter is not warranted.

gages on real property, and (iv) inventory.

. . .

(Emphasis ours).

Reference is also made to 26 C.F.R. § 301.6323(c)–1, which provides in its relevant part:

(c) **Commercial financing security**—

(1) In general. **The term "commercial financing security" means**—

. . .

(iii) **Accounts receivable** (as defined in subparagraph (2) of this paragraph (c),

. . .

(2) Definitions. For purposes of §§ 301.6323(d)–1, 301.6323(h)–1 and this section—

. . .

(ii) **An account receivable is any right to payment for** good sold or leased or for **services rendered** which is not evidenced by an instrument or chattel paper.

(d) **Qualified property.** For purposes of paragraph (a) of this section, **qualified property consists solely of commercial financing security acquired by the taxpayer-debtor before the 46th day after the date of tax lien filing:** Commercial financing security acquired before such day may be qualified property even though it is acquired by the taxpayer after the lender received actual notice or knowledge of the filing of the tax lien. For example, although the receipt of actual notice or knowledge of the filing of the notice of the tax lien has the effect of ending the period within which protected disbursements may be made to the taxpayer, property which is acquired by the taxpayer after the lender receives actual notice or knowledge of such filing and before such 46th

day, which otherwise qualifies as commercial financing security, becomes commercial financing security to which the priority of the lender extends for loans made before he received the actual notice or knowledge. **An account receivable (as defined in paragraph (c)(2)(ii) of this section) is acquired by a taxpayer at the time, and to the extent, a right to payment is earned by performance.**

(Emphasis ours).

In *United States v. Bank of Celina,* 721 F.2d 163, 166–167 (6th Cir.1983), the Court held that, "[i]f property to which a tax lien has attached is held by a third party who also possesses a lien, the issue then becomes one of lien priority." *Id.* "Federal law controls priority disputes, citing *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Acri,* 348 U.S. 211, 213, 75 S.Ct. 239, 99 L.Ed. 264 (1955)." *Id.*

In *American Investment Financial v. United States,* 476 F.3d 810, 813 (10th Cir.2007), the Court held:

**Once a court has determined that a property interest exists under state law, the relative priority of the liens is determined under federal law.** *See United States v. Cache Valley Bank,* 866 F.2d 1242, 1244 (10th Cir.1989). As noted above, **for a private security interest to take priority over a federal tax lien, the interest must be in qualified property, meaning the property must be a type of commercial financing security acquired prior to, or within 45 days after, the federal tax lien filing.** *See* 26 U.S.C. § 6323(c)(1) and (2)." (Emphasis ours).

The Appellant has invited the Court to examine the opinion of *Bloomfield State Bank v. United States,* 644 F.3d 521 (7th Cir.2011), in support of its proposition that

BPPR holds a senior lien in the form of a security over Reitter's property, for "BPPR holds a recorded lien on Debtor's [Reitter] cash collateral, as this term is defined in the Bankruptcy Code, 11 U.S.C. 363(a)." *See* Civil No. 11–1132(DRD), Docket No. 17, p. 11. "The question presented [in *Bloomfield*] is whether a mortgage that assigns future rental income to the mortgagee creates a security interest that takes priority over tax lien." 644 F.3d at 522. The Court in *Bloomfield* held that the answer hinges on two propositions: "whether such an assignment constitutes an 'interest in property acquired by contract for the purpose of securing payment or performance of an obligation' and whether when the interest is acquired '*the property is in existence* and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation.' 26 U.S.C. § 6323(h)(1)." *Id.* (Emphasis on the original). "Only the application of the clause that we have italicized is at issue." *Id.* The district court held that the IRS tax lien had priority over rental income from mortgaged property. The United States Court of Appeals for the Seventh Circuit ("Seventh Circuit"), reversed and remanded the case, (Posner, J.). The Seventh Circuit held that the district court "based his decision primarily on the analogy of rents to accounts receivable; accounts receivable that come into being after a federal tax lien attaches to the assets that generate them have been held not to trump the tax lien." *Id.* at 523. (Citations omitted).

The core of the issue in *Bloomfield* is whether the "property is in existence" at the time the notice of federal tax lien is recorded, as opposed to a rental income which is a determined amount that has been agreed to by the parties in the terms and conditions of the agreement, as the rental income will be used to pay the credi-

tor's mortgage. "The rentals provision in the mortgage created a perfected security interest in rentals received at any time." *Id.* at 523. Hence, "[t]he 'property' that must be in existence for a lender's lien to take priority over a federal tax lien is the property that, by virtue of a perfected security interest in it, is a source of value for repaying a loan in the event of a default; **it is not the money the lender realizes by enforcing his security interest.**" (Emphasis ours). The Court further held that "[t]he mortgage agreement in this case [*Bloomfield*] established a lien on the real estate and all the rents it might yield, up to the amount of the loan, which of course is stated in the agreement." 644 F.3d at 524. The Court in *Bloomfield*, citing *United States v. Pioneer American Insurance Co.*, 374 U.S. 84, 89–91, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963), compared the lien on attorneys' fees with a lien on accounts receivable, and held that "because the lien was on fees for attorneys' services not yet provided, the amount of the lien was unanchored." *Id.* "It was similar to a lien on accounts receivable, the amount of which cannot be known until a good is sold and generates a receivable." *Id.*

The Court finds that the gist in the instant case lies on the FTLA provisions, 26 U.S.C. § 6323(c), and the definition of a commercial transaction financing agreement, as opposed to a commercial financing security, and what constitutes "qualified property" under the commercial security agreement. *See American Investment Financial*, 476 F.3d at 815–816, for a detailed analysis on these three provisions.

▮ In the instant case, it is uncontested that BPPR has a valid, duly recorded commercial transaction financing agreement under Puerto Rico law. As stated by the IRS in its brief, "under 26 U.S.C.

§ 6323(c), Banco Popular's interest in the debtor's [Reitter] accounts receivable is superior to the United States' federal tax liens only if (1) the security agreement was entered into prior to the tax lien filing; (2) the loan to the debtor was extended without Banco Popular's having prior knowledge if the United States' federal tax liens, and prior to the filing of the federal tax lien or within 45 days afterward; and (3) the debtor [Reitter] *acquired* the property at issue within 45 days after the filing of the notice of federal tax lien." (Emphasis in the original). *See* Civil No. 11–1132(DRD), Docket No. 18, p. 25. "Of these elements, only the *third* is at issue here." The Court agrees and briefly explains.

■ The record is clear that, on January 14, 2010, prior to the filing of Reitter's bankruptcy petition, the IRS recorded its Notice of Federal Tax Lien with the United States District Court for the District of Puerto Rico, followed by the recording of other prepetition notices of tax liens. Hence, pursuant to 26 U.S.C. § 6323(c)(1) and (3), any property *acquired* by Reitter for services rendered, such as, accounts receivable as well as payments received from accounts receivable generated on or after March 1, 2010, the date when the statutory harbor period of 45 days elapsed, are subject to the IRS statutory lien priority. As stated above, the determination of a priority status of an IRS lien is governed exclusively by federal law. *See Bank of Celina,* 721 F.2d 163; *American Investment Financial,* 476 F.3d 810, and the collection of cases cited in both cases. In sum, the Court agrees with the bankruptcy court's finding that the IRS is the senior lien holder of Reitter's accounts receivable generated on or after March 1, 2010.[5]

**B. Service of Motions.**

Counsel for both parties allege that the documents were not properly served. After a careful review of the parties' arguments, the Court finds that, even if the parties complied with the minimum requirements of service, as provided by the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."), the minimum requirements may not be sufficient. The Court, however, finds that the answer to the issue lies in the monitoring of the Court's docket. The Court briefly explains.

■ BPPR alleges that the documents were properly served as provided by Fed. R.Bankr.P. 1007. The United States argues that a motion for the use of cash collateral must be served in accordance with the provisions of Fed.R.Bankr.P. 9014, and 4001(b). The Court is of the opinion that counsel has a duty to monitor the court docket. In *In re Pabón Rodríguez,* 233 B.R. 212, 229 (Bankr.D.P.R. 1999), the Court, citing *In re Mayhew,* 223 B.R. 849 (D.R.I.1998), held: **"Rather, it is the duty of an attorney to monitor the docket and to keep him or herself apprised of developments in a case."** (Emphasis ours). *See also In re O.P.M. Leas-*

---

**5.** The district court sitting on appeal takes judicial notice that, on March 27, 2012, Reitter filed its Second Amended Plan of Reorganization, Bankruptcy No. 10–07152(ESL), Docket No. 392, wherein Reitter informs on the settlement agreements reached with BPPR and the IRS, in order to proceed with Reitter's reorganization. *See* "BPPR Plan Settlement," Docket No. 392, Exhibit A, and "IRS Plan Settlement," Docket No. 392, Exhibit B. The Court further notes that in the "BPPR Plan Settlement" it is provided that "[t]he BPPR Allowed Secured Claim is secured by valid, perfected, first priority security interests over all of the collateral as set forth in the BPPR Proof of Claim, subject to this Court's ruling on the first priority lien position of the IRS over certain cash collateral." *See* Bankruptcy No. 10–07152(ESL), Docket No. 392, Exhibit A, p. A–2.

*ing Services, Inc.,* 769 F.2d 911 (2d Cir. 1985); *Wheat v. Rieser,* 452 B.R. 627 (Bankr.D.S.D.Ohio 2011).

In the instant case, the record is clear: (a) the IRS recorded several notices of federal tax lien with the United States District Court for the District of Puerto Rico prior to Reitter's bankruptcy; (b) the first joint motion for the use of cash collateral was filed on September 1, 2010, and it was approved by the bankruptcy court on September 8, 2010; (c) the IRS filed its Proof of Claim docketed under Claim No. 4, on September 8, 2010; (d) on December 6, 2010, the United States opposed Reitter's use of cash collateral; (e) on December 13, 2010, BPPR filed its Proof of Claim docketed under Claim No. 33. Hence, the Court is forced to conclude that the IRS knew, at the very least from August 6, 2010, that Reitter had filed for bankruptcy, as the IRS was included in the Master Address List. As a matter of fact, the filing of the IRS' proof of claim followed shortly thereafter, on September 8, 2010. Likewise, BPPR knew or should have known, at least from August 6, 2010, that the IRS was a priority creditor of Reitter. *See* Reitter's List of Creditors Holding 20 Largest Unsecured Claims, wherein the IRS is listed as creditor, and the amount claimed is $1,887,946.42, Bankruptcy No. 10–07152(ESL), Docket No. 1, and Schedule E filed on August 31, 2010, Docket No. 23, wherein the IRS is listed as a creditor holding unsecured priority claim in the amount of $1,887,946.00. Moreover, on September 8, 2010, the IRS filed its proof of claim in the amount of $2,451,956.32 from which the amount of $959,292.94 is claimed as secured, and the amount of $516,416.44 is claimed as unsecured. Hence, the Court fails to understands why the United States waited until December 6, 2010 to object to Reitter's use of cash collateral, and that BPPR simply failed to properly serve the IRS to its address of the proof of claim, the United States Attorney General, and the United States Department of Justice, to responsibly entertain this matter.

The bankruptcy court record further shows that BPPR is Reitter's largest listed secured creditor, and that the IRS is one of the two largest listed unsecured priority creditors. At a bare minimum, counsel for the United States, BPPR, as well as Reitter's had a duty to closely monitor the Court's docket including the Claims Register, in order to litigate this case, and to avoid unnecessary delays, costs, and expenses that surely are prejudicial to all parties in interest.

In sum, the Court finds that counsel failed to provide the appropriate notice for failure to comply with their duty to monitor the court docket.

### C. Judicial Notice.

Appellant alleges that the bankruptcy court erred for taking judicial notice and considering documents that were part of the record, however, were not presented into evidence at the evidentiary hearing held on December 28, 2010. Rule 201 of the Federal Rules of Evidence governs what and how is subject to judicial notice. Rule 201(c) specifically provides that the court: "(1) **may take judicial notice on its own;** or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information." (Emphasis ours). Rule 201(d) provides that "[t]**he court may take judicial notice at any stage of the proceeding.**" (Emphasis ours).

In *Colonial Penn Insurance Company v. Coil,* 887 F.2d 1236, 1239–1240 (4th Cir. 1989), the Court held that, although an "appellate court normally will not consider facts outside the record on appeal" ... "judicial notice may be taken at any stage

if the proceeding" ... "thus, an appellate court may take judicial notice of facts." *Id.* The Court further held that, "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records." *Id.* citing 21 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5106 at 505 (1977). *See also M/V American Queen v. San Diego Marine Construction Corp.*, 708 F.2d 1483, 1491–1492 (9th Cir.1983) ("As a general rule, a court may not take judicial notice of proceedings or records **in another cause** so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it"). The Court further held, that a trial court sitting without a jury, is "able to assess the probative value" of the contracts in question. *Id.* Lastly, the parties "failed to show how its substantial rights have been affected by admitting the contracts." *Id.*

■ In view of the foregoing, the Court finds that the bankruptcy court did not abuse its discretion by taking judicial notice of the documents which are part of the record, and which are directly related to the determination of whether or not the IRS is a senior lien holder of Reitter. Furthermore, BPPR has failed to show how the consideration of the documents that are part of the record have been prejudicial to BPPR, or how by not considering said documents would have changed the interpretation and application of the law in favor of BPPR.

D. **Whether the bankruptcy court erred by failing to inform counsel the proper procedure to be followed when litigating a lien priority and/or the use of cash collateral?**

■ Counsel for both BPPR and the United States allege that the bankruptcy court erred by failing to inform the parties the proper procedure to be followed when

litigating an issue of lien priority and/or the use of cash collateral. The answer of the district court is quite simple. A party "cannot expect a trial court to do his homework for him." *Cruz–Báez, et al. v. Negrón–Irizarry*, 220 F.Supp.2d 77, 79, n. 3 (D.P.R.2002), citing *McCoy v. Massachusetts Institute of Technology*, 950 F.2d 13, 22 (1st Cir.1991). Rather, the parties have an affirmative responsibility to put their best foot forward in an effort to present a legal theory that will support their claim. *Cruz–Báez*, 220 F.Supp.2d at 79, citing *McCoy*, 950 F.2d at 23.

## Conclusion

For the reasons set forth above, the Court finds that: (a) the appeal docketed under Civil No. 11–1132(DRD) is dismissed, as the bankruptcy court *Order* of December 28, 2010 was not a final appealable order; (b) the appeal docketed under Civil No. 11–1529(DRD) is dismissed, as the bankruptcy court's *Opinion and Order* of May 13, 2011 is AFFIRMED.

Judgment will be entered accordingly.

IT IS SO ORDERED.